William CAMIRE

v.

AETNA LIFE INSURANCE COMPANY, INC.

Civ. No. 92–615–JD.

United States District Court, D. New Hampshire.

May 27, 1993.

---

Kathryn S. Williams, Epping, NH, for plaintiff.

Edward P. O'Leary, Boston, MA, for defendant.

## ORDER

DiCLERICO, District Judge.

In the matter before the court, the plaintiff William Camire has sued the defendant, Aetna Life Insurance Company ("Aetna"), alleging breach of contract, negligence and violations of N.H.Rev.Stat.Ann. § 408:10–a (1991) and N.H.Rev.Stat.Ann. § 358–A:2 (1984 & Supp.1992). The plaintiff originally brought suit in Rockingham County Superior Court on October 27, 1992. On December 5, 1992, Aetna removed the case to the United States District Court for the District of New Hampshire pursuant to 28 U.S.C.A. § 1441 (West 1973 & Supp.1993). On January 14, 1993,

Aetna filed a motion to dismiss the lawsuit pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. On February 1, 1993, the court granted the plaintiff's motion to add a count alleging violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C.A. § 1001 *et seq.* (West 1985 & Supp.1993). For the following reasons, the court grants Aetna's motion to dismiss the lawsuit for failure to state a claim upon which relief can be granted.

### Background

The following facts are undisputed. Mr. Camire was employed by Rockwell International Corporation ("Rockwell"). Rockwell delivered an application for spousal life insurance to him. He completed the application for his wife, Deborah Camire. Mr. Camire disclosed on the application that Ms. Camire had multiple sclerosis. Aetna issued a Group Universal Life Insurance Policy for $29,000 insuring Ms. Camire and accepted premiums on the policy. On December 31, 1989, Ms. Camire died as a result of her illness. In January 1990, Mr. Camire requested the death benefits under the Aetna policy. On February 21, 1990, Aetna denied benefits because Ms. Camire, due to her illness, did not meet the eligibility requirements for the policy specified in the Plan Detail Book. On August 7, 1990, Aetna reversed its decision and issued a check to Mr. Camire in the policy amount plus interest. In this lawsuit, Mr. Camire seeks compensation for consequential damages resulting from Aetna's delay in paying the proceeds from the policy, including emotional distress, enduring eviction proceedings and bank foreclosure of his home and sustaining damage to his credit and his standing in the community.

### Discussion

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) is one of limited inquiry, focusing not on "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Accordingly, the court must take the factual averments contained in the complaint as true, "indulging every reasonable inference helpful to the plaintiff's cause." *Garita Hotel Ltd. Partnership v. Ponce Fed. Bank,* 958 F.2d 15, 17 (1st Cir.1992); *see also Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 16 (1st Cir. 1989). In the end, the court may grant a motion to dismiss under Rule 12(b)(6) " 'only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory.' " *Garita,* 958 F.2d at 17 (quoting *Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 52 (1st Cir.1990)).

■ Aetna contends Mr. Camire's claims are pre-empted by ERISA. Aetna further asserts the consequential damages Mr. Camire seeks are unavailable under ERISA. Alternatively, Aetna argues the plaintiff's allegations fail to state a claim under state law.[1] Mr. Camire counters ERISA does not govern his claims because he did not understand he was being offered an "employee benefit" when he applied for the policy, and he expected the relationship would be governed exclusively by state law. The plaintiff cites no law for his contention that the law governing the case depends on his subjective belief. The court finds the plain language of ERISA's definition of an "employee welfare benefit plan" encompasses the policy offered to Mr. Camire.[2] Mr. Camire also asserts N.H.Rev.Stat.Ann. §§ 358–A:2 and 408:10–a are exempt from ERISA pre-emption under the insurance saving clause, 29 U.S.C.A. § 1144(b)(2)(A) (West 1985 & Supp.1993). Finally, Mr. Camire contends ERISA allows him to recover extracontractual damages.

---

1. In view of the court's ruling that the plaintiff's claims are pre-empted by ERISA, the court need not consider Aetna's alternative argument.

2. An "employee welfare benefit plan" under ERISA is

   any plan, fund, or program ... established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death....

   29 U.S.C.A. § 1002(1) (West Supp.1993).

## I. ERISA's Express Pre-emption Clause

The court considers whether Mr. Camire's claims are pre-empted by ERISA. As early as 1824, the United States Supreme Court, under the rubric of the Supremacy Clause,[3] declared that state laws which "interfere with, or are contrary to, the laws of congress, made in pursuance of the constitution" are pre-empted and therefore invalid. *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 211, 6 L.Ed. 23 (1824). The First Circuit has recently noted that "[t]his verity remains firmly embedded in our modern jurisprudence." *Greenwood Trust Co. v. Massachusetts*, 971 F.2d 818, 822 (1st Cir.1992) (citing *Wisconsin Pub. Intervenor v. Mortier*, —— U.S. ——, ——, 111 S.Ct. 2476, 2481, 115 L.Ed.2d 532 (1991); *Hillsborough County v. Automated Medical Lab., Inc.*, 471 U.S. 707, 712, 105 S.Ct. 2371, 2374, 85 L.Ed.2d 714 (1985), *Securities Indus. Ass'n v. Connolly*, 883 F.2d 1114, 1117 (1st Cir.1989), *cert. denied*, 495 U.S. 956, 110 S.Ct. 2559, 109 L.Ed.2d 742 (1990)), *cert. denied*, —— U.S. ——, 113 S.Ct. 974, 122 L.Ed.2d 129 (1993). "Express pre-emption occurs 'when Congress has "unmistakably ... ordained" that its enactments alone are to regulate a [subject, and] state laws regulating that [subject] must fall.'" *Id.* (quoting *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977) (internal citation omitted)).

"'[T]he question whether a certain state action is pre-empted by federal law is one of congressional intent. "The purpose of Congress is the ultimate touchstone."' To discern Congress' intent we examine the explicit statutory language and the structure and purpose of the statute." *Ingersoll–Rand v. McClendon*, 498 U.S. 133, 137–38, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990) (quoting *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 208, 105 S.Ct. 1904, 1910, 85 L.Ed.2d 206 (1985)) (internal citations omitted). The express pre-emption provision in § 1144 of ERISA provides, in relevant part:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

29 U.S.C.A. § 1144(a) (West 1985 & Supp. 1993). "Where, as here, Congress has expressly included a broadly worded pre-emption provision in a comprehensive statute such as ERISA, our task of discerning congressional intent is considerably simplified." *Ingersoll–Rand*, 498 U.S. at 138, 111 S.Ct. at 482. ERISA's pre-emption clause is "'conspicuous for its breadth'". *Id.* (quoting *FMC Corp. v. Holliday*, 498 U.S. 52, 58, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990)). "The key to [§ 1144(a)] is found in the words 'relate to.' Congress used those words in their broad sense, rejecting more limited pre-emption language that would have made the clause 'applicable only to state laws relating to the specific subjects covered by ERISA.'" *Ingersoll–Rand*, 498 U.S. at 138, 111 S.Ct. at 482 (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 98, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983)). "[T]he express pre-emption provisions of ERISA are deliberately expansive, and designed to 'establish pension plan regulation as exclusively a federal concern.'" *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45–46, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987) (quoting *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981)).

The United States Supreme Court has held "[t]he phrase 'relate to' was given its broad common-sense meaning, such that a state law 'relate[s] to' a benefit plan 'in the normal sense of the phrase, if it has a connection with or reference to such a plan.'" *Metropolitan Life Ins. Co. v. Travelers Ins. Co.*, 471 U.S. 724, 739, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985) (quoting *Shaw*, 463 U.S. at 96–97, 103 S.Ct. at 2899–900); *see*

---

**3.** The Supremacy Clause provides:
   This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding. U.S. Const. art. VI, cl. 2.

*also Mackay v. Lanier Collection Agency & Serv., Inc.,* 486 U.S. 825, 829, 108 S.Ct. 2182, 2185, 100 L.Ed.2d 836 (1988). A state law may "relate to" an employee benefit plan even if it is not specifically designed to affect employee benefit plans or if it only indirectly affects such plans. *Ingersoll–Rand,* 498 U.S. at 139, 111 S.Ct. at 483 (citing *Pilot Life,* 481 U.S. at 47, 107 S.Ct. at 1552).

### a. Common–Law Claims

■ The court considers whether ERISA pre-empts Mr. Camire's common-law negligence and breach of contract claims because they are laws relating to employee benefit plans.[4] In *Pilot Life,* an employee brought common-law tort and breach of contract claims against an insurance company asserting improper processing of a claim for benefits under an employee benefit plan. 481 U.S. at 43, 107 S.Ct. at 1550. The *Pilot Life* Court noted "[t]he common law causes of action raised in [plaintiff's] complaint, each based on alleged improper processing of a claim for benefits under an employee benefit plan, undoubtedly meet the criteria for pre-emption under [§ 1144(a) ]." *Pilot Life,* 481 U.S. at 48, 107 S.Ct. at 1553; *see also Schuyler v. Protective Life Ins. Co.,* No. 92–192–D, slip op. at 8 (D.N.H. Nov. 30, 1992) (ERISA pre-empted plaintiff's claim that insurer wrongly denied and rescinded plaintiff's insurance coverage under his employer's plan). The *Pilot Life* Court later noted Congress' "intention that all suits brought by beneficiaries or participants asserting improper processing of claims under ERISA-regulated plans be treated as federal questions...." 481 U.S. at 56, 107 S.Ct. at 1557.

In this case, Mr. Camire's claims are based on Aetna's conduct in belatedly paying the proceeds of a life insurance policy on Ms. Camire. He alleges the delayed payment breached the insurance contract and constituted negligence because Aetna had a duty to

settle the claim in a reasonable time, breached that duty and caused him harm. The court finds Mr. Camire's common-law claims of negligence and breach of contract "relate to" his employee benefit plan with Aetna and therefore are pre-empted by ERISA § 1144(a).[5]

### b. Statutory Claims

The court next analyzes whether ERISA pre-empts the plaintiff's statutory claims. If the state laws in question in this case, N.H.Rev.Stat.Ann. §§ 408:10–a and 358–A:2, "relate to any employee benefit plan," ERISA pre-empts them unless the insurance saving clause in § 1144(b)(2)(A) exempts them from pre-emption. The insurance saving clause provides as follows: "Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance...." 29 U.S.C.A. § 1144(b)(2)(A).

### 1. Section 408:10–a

■ The court considers whether ERISA pre-empts Mr. Camire's claim under N.H.Rev.Stat.Ann. § 408:10–a because it "relate[s] to" any employee benefit plan. Section 408:10–a provides for interest payments on life insurance death benefits and states, in relevant part, "[n]othing in this section shall be construed to allow any life insurance company doing business in this state to withhold payment of money payable under a life insurance policy to any beneficiary for a period longer than reasonably necessary to transmit such payment." N.H.Rev.Stat.Ann. § 408:10–a II.

The court finds section 408:10–a does "relate to" an employee benefit plan. A state law may "relate to" a benefit plan even if the law is not specifically designed to affect such plans and even if it only indirectly affects

---

**4.** The court notes the phrase "state laws" within ERISA's pre-emption provision should be interpreted to include common law as well as statutes. *See Cipollone v. Liggett Group, Inc.,* —— U.S. ——, ——, 112 S.Ct. 2608, 2620, 120 L.Ed.2d 407 (1992) ("At least since *Erie R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), we have recognized the phrase 'state law' to include common law as well as

statutes and regulations."); *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 246, 79 S.Ct. 773, 780, 3 L.Ed.2d 775 (1959).

**5.** The court notes the parties have not argued Mr. Camire's common-law claims fall under any exception to ERISA's pre-emption clause.

such plans. *See Ingersoll–Rand,* 498 U.S. at 139, 111 S.Ct. at 483. The court finds section 408:10–a affects employee benefit plans by governing payments on life insurance death benefits. The court therefore finds section 408:10–a "relates to" employee benefit plans and is pre-empted by ERISA unless saved by the insurance saving clause.

The court next analyzes whether the insurance saving clause exempts from pre-emption Mr. Camire's section 408:10–a claim. ERISA's insurance saving clause exempts only those state insurance laws that regulate the "business of insurance." *Schuyler,* No. 92–192–D, slip op. at 9 (citing *Powell v. Chesapeake and Potomac Tel. Co.,* 780 F.2d 419, 423 (4th Cir.1985), *cert. denied,* 476 U.S. 1170, 106 S.Ct. 2892, 90 L.Ed.2d 980 (1986)); *see also Metropolitan Life Ins. Co.,* 471 U.S. at 742–43, 105 S.Ct. at 2390–91. Courts use the definition of the "business of insurance" found in the McCarran–Ferguson Act to define which statutes are within the insurance saving clause. *Schuyler,* No. 92–192–D, slip op. at 9 (citing *Powell,* 780 F.2d at 423); *see also Metropolitan Life Ins. Co.,* 471 U.S. at 742–43, 105 S.Ct. at 2390–91. Under the McCarran–Ferguson Act, three criteria are relevant to determine whether a particular practice falls within the "business of insurance:" " 'first, whether the practice has the effect of transferring or spreading a policyholder's risk; second, whether the practice is an integral part of the policy relationship between the insurer and the insured; and third, whether the practice is limited to entities within the insurance industry.' " *Metropolitan Life Ins. Co.,* 471 U.S. at 743, 105 S.Ct. at 2391 (quoting *Union Labor Life Ins. Co. v. Pireno,* 458 U.S. 119, 129, 102 S.Ct. 3002, 3009, 73 L.Ed.2d 647 (1982)); *see also Schuyler,* No. 92–192–D, slip op. at 9 (citing *Pilot Life,* 481 U.S. at 48–49, 107 S.Ct. at 1553).

Applying the McCarran–Ferguson Act's three-step test, the court finds § 408:10–a is not exempt from ERISA pre-emption as a law that regulates insurance. First, the court notes section 408:10–a does not transfer or spread policy holder risk. *Cf. Metropolitan Life Ins. Co.,* 471 U.S. at 743, 105 S.Ct. at 2391 (mandated benefits law requir-

ing coverage for mental health transfers policy holder risk). Second, the court finds that although Mr. Camire's claim affects the policy relationship between the insurer and the insured, it does not affect an integral part of the relationship because section 408:10–a does not regulate the terms of the contract itself. *See Pilot Life,* 481 U.S. at 50–51, 107 S.Ct. at 1554 (Mississippi common law of bad faith concerns the policy relationship between the insurer and the insured but the connection is attenuated at best because it does not define the terms of the relationship itself); *Schuyler,* No. 92–192–D, slip op. at 9–11 (claim for wrongful denial of benefits affects the policy relationship between the insurer and the insured but the connection is attenuated at best because the claim is not related to defining the terms of the relationship itself).

> "Congress was concerned [in the McCarran–Ferguson Act] with the type of state regulation that centers around the contract of insurance.... The relationship between insurer and insured, the type of policy which could be issued, its reliability, its interpretation, and enforcement—these were the core of the 'business of insurance.' "

*Metropolitan Life Ins. Co.,* 471 U.S. at 743–44, 105 S.Ct. at 2391 (quoting *SEC v. National Sec., Inc.,* 393 U.S. 453, 460, 89 S.Ct. 564, 568, 21 L.Ed.2d 668 (1969)). Section 408:10–a does not affect an integral part of the insurance contract—the conditions under which payment will be due—but affects only the payment schedule after liability has been established under the terms of the contract. Section 408:10–a does not restrict the type of policy which can be issued, does not affect the reliability of the policy and does not affect the interpretation of the policy terms governing whether payment is due. The court therefore finds that, although Mr. Camire's claim under section 408:10–a affects the relationship between the insurer and the insured, it does not affect an integral part of that relationship.

However, the court notes section 408:10–a, by its terms, is limited to entities within the insurance industry. Nevertheless, "no particular factor of the McCarran–Ferguson Act

is dispositive; rather each is instructive." *Schuyler*, No. 92–192–D, slip op. at 11 (court found statute was limited to entities within the insurance industry but did not regulate insurance under McCarran–Ferguson analysis) (citing *United Food & Commercial Workers v. Pacyga*, 801 F.2d 1157, 1161 (9th Cir.1986)). In view of the preceding analysis, the court finds Mr. Camire's claim under N.H.Rev.Stat.Ann. § 408:10–a is not exempt from ERISA pre-emption under the insurance saving clause.

The court's conclusion is bolstered by the role the insurance saving clause plays in ERISA as a whole. *See Pilot Life*, 481 U.S. at 51, 107 S.Ct. at 1554. Because in this case, as in *Pilot Life*, "the state cause of action seeks remedies for the improper processing of a claim for benefits under an ERISA-regulated plan, our understanding of the saving clause must be informed by the legislative intent concerning the civil enforcement provisions provided by ERISA § 502(a), 29 U.S.C. § 1132(a)." *See Pilot Life*, 481 U.S. at 51–52, 107 S.Ct. at 1555. The *Pilot Life* Court noted that Congress intended the civil enforcement provisions of ERISA to "be the exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits, and that varying state causes of action for claims within the scope of [§ 1132(a)] would pose an obstacle to the purposes and objectives of Congress." *Pilot Life*, 481 U.S. at 52, 107 S.Ct. at 1555; *see also Ingersoll–Rand*, 498 U.S. at 144, 111 S.Ct. at 485. In accord with Congress' intent that ERISA provide the exclusive remedy for claims of improper processing of ERISA plan benefits, the court finds Mr. Camire's claim under section 408:10–a is pre-empted by ERISA and not within the insurance saving clause.

### 2. Section 358–A:2

■ Section 358–A:2, the New Hampshire consumer protection statute, provides "[i]t shall be unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state." In interpreting section 358–A:2, it is appropriate

for the court to look to Massachusetts law interpreting its consumer protection statute, Mass.Gen.L. ch. 93A (1984). *See WVG v. Pacific Ins. Co.*, 707 F.Supp. 70, 73 (D.N.H. 1986) (citing *Chase v. Dorais*, 122 N.H. 600, 602, 448 A.2d 390 (1982)).

In *Gilson v. Retail Recruiters Int'l Inc.*, No. 89–0493–WD, 1991 WL 83383, at *1, *4 (D.Mass. Mar. 21, 1991) (Magistrate's Report and Recommendation), the plaintiff sued an insurance company for improper denial of a benefit claim, alleging violations of Mass. Gen.L. ch. 93A. The court found the statute "relate[d] to" an employee benefit plan and was pre-empted by ERISA. *See Gilson*, No. 89–0493–WD, 1991 WL 83383, at *4. In this case, the court similarly finds Mr. Camire's claim under N.H.Rev.Stat.Ann. § 358–A:2, that the insurance company's failure to pay promptly the proceeds of a life insurance policy constitutes an unfair trade practice, "relate[s] to" an employee benefit plan and is pre-empted by ERISA.

The *Gilson* court further found the Massachusetts consumer protection statute was not exempt as a law "regulat[ing] insurance." No. 89–0493–WD, 1991 WL 83383, at *4. "With respect to the alleged violations of Massachusetts General Laws, Chapter 93A, ERISA's 'saving clause,' which provides that any state law that 'regulates' insurance will be excepted from preemption, offers plaintiff's claim no hope for survival." *Gilson*, No. 89–0493–WD, 1991 WL 83383, at *4 (quoting 29 U.S.C.A. § 1144(b)(2)(A)). The *Gilson* court applied the McCarran–Ferguson test and determined Mass.Gen.L. ch. 93A was not exempt as a law regulating insurance. No. 89–0493–WD, 1991 WL 83383, at *4 (quoting *Pilot Life*, 481 U.S. at 46, 107 S.Ct. at 1552); *see also Schuyler*, No. 92–192–D, slip op. at 9–10 (applying same test to claim of wrongful denial of benefits under N.H.Rev.Stat.Ann. § 491:22 (Supp.1992) and N.H.Rev.Stat.Ann. § 417 (1991 & Supp. 1992)). The *Gilson* court noted Mass.Gen.L. ch. 93A is not a law regulating insurance because it is not "specifically directed at the insurance industry." *Gilson*, No. 89–0493–WD, 1991 WL 83383, at *4.

Applying the McCarran–Ferguson analysis to section 358–A:2, the court first notes sec-

tion 358–A:2 does not transfer or spread policy risk. *See Schuyler*, No. 92–192–D, slip op. at 9 (claim for wrongful denial of benefits does not transfer or spread policy risk). In addition, Mr. Camire's claim under section 358–A:2 does not affect an integral part of the insurer-insured relationship because section 358–A:2 does not regulate the terms of the contract itself. *See Pilot Life*, 481 U.S. at 50–51, 107 S.Ct. at 1554; *Schuyler*, No. 92–192–D, slip op. at 9–11. Finally, the court notes § 358–A:2 is not limited to entities within the insurance industry. The court therefore finds Mr. Camire's claim under § 358–A:2 is not saved by the insurance saving clause and is preempted by ERISA.

## II. Plaintiff's Remedies Under ERISA

The plaintiff has amended his complaint to allege violations of 29 U.S.C.A. § 1109(a) (West 1985) and 29 U.S.C.A. § 1132(a) (West 1985 & Supp.1993). Even assuming the plaintiff has stated a cause of action under ERISA, the court finds the extracontractual damages the plaintiff seeks are unavailable under ERISA.

■ This court has previously found extracontractual damages are unavailable under ERISA. *Pension Plan of Public Serv. Co. of New Hampshire v. KPMG Peat Marwick*, 815 F.Supp. 52, 56–57 (1993) (citing *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 148, 105 S.Ct. 3085, 3093, 87 L.Ed.2d 96 (1985); *Kwatcher v. Massachusetts Serv. Employees Pension Fund*, 879 F.2d 957, 964–65 (1st Cir.1989); *Drinkwater v. Metropolitan Life Ins. Co.*, 846 F.2d 821, 824 (1st Cir.), *cert. denied*, 488 U.S. 909, 109 S.Ct. 261, 102 L.Ed.2d 249 (1988); *Gaskell v. Harvard Coop. Soc'y*, 762 F.Supp. 1539, 1543 (D.Mass.1991)), *appeal docketed*, No. 93–1304 (1st Cir. Mar. 22, 1993). The United States Supreme Court in *Russell* held extracontrac-

tual damages caused by improper or untimely processing of a benefit claim are not available under ERISA's fiduciary liability provision, 29 U.S.C.A. § 1109(a). *Russell*, 473 U.S. at 148, 105 S.Ct. at 3093. Similarly, the First Circuit Court of Appeals in *Drinkwater* concluded that extracontractual damages are unavailable under 29 U.S.C.A. § 1132(a). *Drinkwater*, 846 F.2d at 825.[6]

In conclusion, because the court finds plaintiff's state law claims are pre-empted by ERISA and the damages sought by the plaintiff are unavailable under ERISA, the court finds the plaintiff's complaint fails to state a cause of action upon which relief can be granted.

### Summary

For the foregoing reasons, the Defendant's Motion to Dismiss for Failure to State a Claim upon Which Relief May Be Granted (document no. 8) is granted.

SO ORDERED.

---

6. The court notes the United States Supreme Court, in *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 145, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), may have called into question whether extracontractual damages may be recoverable under ERISA. The court recognizes that courts have disagreed over whether *Ingersoll–Rand* intended to overrule *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985) and its progeny. *See Harsch v. Eisenberg*, 956 F.2d 651, 659–60 (7th Cir.) (discussing cases expressing both opinions), *cert.*

denied, —— U.S. ——, 113 S.Ct. 61, 121 L.Ed.2d 29 (1992). The court has previously stated its agreement with the *Harsch* court's statement that "we are not rash enough to believe that the Court intended to overrule settled law in most of the circuits, as well as narrowly limit—if not overrule—its own decision in *Russell* in such an offhand manner." *See Pension Plan of Public Serv. Co. of New Hampshire v. KPMG Peat Marwick*, 815 F.Supp. 52, 56 n. 2 (1993) (quoting *Harsch*, 956 F.2d at 660), *appeal docketed*, No. 93–1304 (1st Cir. Mar. 22, 1993).