**Lee HAYDEN, et al., Plaintiffs,**

**v.**

**BLUE CROSS AND BLUE SHIELD OF ALABAMA, Defendant.**

**Civ. A. No. 92–A–1386–N.**

United States District Court,
M.D. Alabama, N.D.

Feb. 7, 1994.

Andrew P. Campbell, Birmingham, AL, Russell L. Irby, Eufaula, AL, Eddie Leitman, Birmingham, AL, Kerry Phillip Luke, S. Lynne Stephens, Leitman, Siegal, Payne & Campbell, Birmingham, AL, for plaintiffs.

Charles M. Crook, Balch & Bingham, Montgomery, AL, Cavender C. Kimble, Balch & Bingham, Birmingham, AL, for defendant.

## *MEMORANDUM OPINION*

ALBRITTON, District Judge.

### I. Introduction

This cause is now before the court on the cross-motions for partial summary judgment filed by Defendant, Blue Cross and Blue Shield of Alabama ("Blue Cross"), on June 11, 1993 and Plaintiffs, Lee Hayden, Mary Long, and Neil Buettner, on June 15, 1993.[1]

Plaintiffs filed this action in October 1992, alleging that Blue Cross had failed to directly pay Certified Registered Nurse Anesthetists ("CRNAs") in violation of Ala.Code § 27–46–1 (1975 & Supp.1993), a statute enacted in 1989.[2] They sought damages, a declaratory

---

1. A hearing was held and oral arguments were heard on August 6, 1993.

2. Ala.Code § 27–46–1 provides as follows:
   Notwithstanding any other provision of law, when any contract or plan of health insurance, or any plan or agreement for health care services provides for the reimbursement or payment for services which are within the scope of practice of registered nurses who have passed or who are qualified to take the national certification examination for the specialty practice

judgment that Blue Cross is subject to §§ 27–46–1 through 27–46–3 [3], and injunctive relief.

Blue Cross filed a counterclaim on December 14, 1992, seeking a declaration that ERISA preempts this action and a declaration of its rights regarding the coverage of CRNA services pursuant to § 27–46–1 under both ERISA and non-ERISA governed contracts.

In an Order dated May 6, 1993, the court certified this case as a class action pursuant to Fed.R.Civ.P. 23(a) & (b)(2) on behalf of the following described class of plaintiffs/counter-defendants:

All [CRNAs] who have practiced or will in the future practice anesthesia in the State of Alabama who have submitted subsequent to the effective date of *Alabama Code* Section 27–46–1, or will be able to in the future to submit, claims for services to patients who receive health benefits through health benefits plans issued or administered by Blue Cross and Blue Shield of Alabama,

with respect to the following claims only:

(a) All claims seeking a declaration whether Blue Cross and Blue Shield of Alabama is subject to *Alabama Code* Section 27–46–1;

(b) All claims seeking a declaration whether *Alabama Code* Section 27–46–1 is preempted by ERISA, 29 U.S.C. § 1144(a);

(c) All claims seeking a declaration whether coverage for independently-billed CRNA services is provided under Major Medical or Hospital Services coverage by health benefit plans issued or administered by Blue Cross and Blue Shield of Alabama where the plans do not specifically state that independently billed CRNA services are covered.

On June 18 and July 26 1993, Plaintiffs amended their complaint to include claims under ERISA.

Blue Cross contends (1) that § 27–46–1 is preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et seq.* ("ERISA") and (2) that under Alabama law, the statute is not applicable to it.

On the other hand, Plaintiffs contend (1) that with respect to their claims against Blue Cross premised on ERISA governed benefit plans, § 27–46–1 is not preempted by ERISA and applies to Blue Cross and (2) that with respect to their claims based on non-ERISA plans, § 27–46–1 applies to Blue Cross.

Blue Cross has moved for summary judgment as to Counts II and III of its counterclaim, and plaintiffs have moved for summary judgment as to the same issues. For the reasons stated below, the court finds that Blue Cross' motion for partial summary judgment is due be granted and Plaintiffs' motion for partial summary judgment is due to be denied.

## II. Facts

Plaintiffs are all properly licensed CRNAs who perform anesthesia services. They performed anesthesia services for individuals covered under contracts or plans of health insurance or agreements for health care services with Blue Cross.

In 1989 the Alabama legislature enacted a statute providing for direct payment to CRNAs under certain circumstances. Plaintiffs have sought direct reimbursement for the services provided to Blue Cross's customers to date, approximately $250,000, without success. Plaintiffs' claims for direct reimbursement are based on Ala.Code § 27–46–1. Blue Cross has refused to make payments to

of nurse anesthetist as recognized by the Alabama board of nursing, then the insured, or any other person covered by the policy, plan, contract or certificate shall be entitled to reimbursement or payment for such services performed by the certified registered nurse anesthetist, and said certified registered nurse anesthetist shall be entitled to direct reimbursement by the insurer, unless the certified registered nurse anesthetist is employed by contract with a group practice of anesthesiologist or a hospital, then such services shall be reimbursed through the employer.

**3.** Section 27–46–2 states that hospitals are free to regulate the qualifications required and activities of its CRNAs and § 27–46–3 merely defines CRNA. The court finds that analysis of these two sections is unnecessary to the resolution of the motions before it.

the CRNAs because it claims that under Ala.Code §§ 10–4–115 and 27–1–4[4] it is exempt from § 27–46–1.[5]

Plaintiffs originally filed this suit in the Circuit Court of Barbour County, Alabama, in October 1992. Blue Cross timely removed the action under 28 U.S.C. § 1441 to this court on November 5, 1992, on the ground that the Plaintiffs' claims are preempted by ERISA.

In a Memorandum Opinion dated January 29, 1993, the court held that Plaintiffs' state law claims against the welfare benefit plans in question were preempted by ERISA and denied their motion to remand. *Hayden v. Blue Cross and Blue Shield of Alabama,* No. 92–A–1386–N, mem. op. at 7–8 (M.D.Ala. January 29, 1993).[6]

Subsequently, both Plaintiffs and Blue Cross filed cross-motions for partial summary judgment.

## III. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." This standard can be met by the movant, in a case in which the ultimate burden of persuasion at trial rests on the nonmovant, either by submitting affirmative evidence negating an essential element of the nonmovant's claim, or by demonstrating that the nonmovant's evidence itself is insufficient to establish an essential element of his or her claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The burden then shifts to the nonmovant to make a showing sufficient to establish the existence of an essential element to his claims, and on which he bears the burden of proof at trial. *Id.* To satisfy this burden, the nonmovant cannot rest on the pleadings, but must by affidavit or other appropriate means, set forth specific facts showing that there is a genuine issue for trial. Fed. R.Civ.P. 56(e).

The court's function in deciding a motion for summary judgment is to determine whether genuine, material issues of fact exist to be tried, and if not, whether the movant is entitled to a judgment as a matter of law. *See Dominick v. Dixie National Life Insurance Company,* 809 F.2d 1559 (11th Cir. 1987). It is the substantive law that identifies those facts which are material on motions for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 258, 106 S.Ct. 2505, 2515, 91 L.Ed.2d 202 (1986). *See also DeLong Equipment Co. v. Washington Mills Abrasive Co.,* 887 F.2d 1499 (11th Cir. 1989).

When the court considers a motion for summary judgment it must refrain from deciding any material factual issues. All the evidence and the inferences from the underlying facts must be viewed in the light most favorable to the nonmovant. *Earley v. Champion International Corp.,* 907 F.2d 1077, 1080 (11th Cir.1990). *See also Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The movant bears "the exacting burden of demonstrating that there is no dispute as to any material fact in the case." *Warrior Tombigbee Transp. Co.*

---

**4.** Section 10–4–115 states:

No statute of this state applying to insurance companies shall be applicable to any corporation organized under the provisions of this article and amendments thereto or to any contract made by such corporation unless expressly mentioned in this article and made applicable; except, that the provisions regarding annual premium tax to be paid by domestic insurance companies, pursuant to section 27–4–5, shall be applicable.

Section 27–1–4(2) states:

This Title shall not apply to:

. . . . .

Nonprofit corporations for establishment of hospitalization plan under section 10–4–100 et

seq., except to the extent now or hereafter provided in such laws.

**5.** Blue Cross is a nonstock corporation organized not for profit for the purpose of establishing, maintaining and operating a health care service plan. Ala.Code § 10–4–100; *Lee v. Blue Cross/ Blue Shield of Alabama,* 10 F.3d 1547, 1551 (11th Cir.1994) (citations omitted); *Blue Cross & Blue Shield v. Protective Life Ins. Co.,* 527 So.2d 125, 126 (Ala.Civ.App.1987).

**6.** "Welfare plans" include plans providing "benefits in the event of sickness, accident [or] disability." 29 U.S.C. § 1002(1).

*v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir.1983). *See also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

With these rules and principles of law in mind, the court will determine whether summary judgment is appropriate or whether genuine issues of material fact exist that should properly proceed to trial for resolution.

## IV. Discussion

### A. ERISA Preemption

#### 1. General Principles

■ In determining whether a federal statute preempts a state law, Congress' intent controls. *FMC Corp. v. Holliday*, 498 U.S. 52, 56, 111 S.Ct. 403, 406, 112 L.Ed.2d 356 (1990); *First Nat. Life Ins. Co. v. Sunshine–Jr. Food Stores, Inc.*, 960 F.2d 1546, 1549 (11th Cir.1992) (citation omitted), *cert. denied*, —— U.S. ——, 113 S.Ct. 1045, 122 L.Ed.2d 354 (1993). "If the intent of Congress is clear, that is the end of the matter; for the court … must give effect to the unambiguously express intent of Congress." *Chevron, United States, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). *See also Cipollone v. Liggett Group, Inc.*, —— U.S. ——, ——, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992) (congressional intent " 'is the ultimate touchstone' of preemption analysis") (quoting *Malone v. White Motor Corp.*, 435 U.S. 497, 502–04, 98 S.Ct. 1185, 1188–90, 55 L.Ed.2d 443 (1978)). At the same time, a court must presume that Congress did not intend to preempt "areas of traditional state regulation." *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 740, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985).

ERISA's preemption clause is notably broad. *See* 29 U.S.C. § 1144(a); *FMC Corp.*, 498 U.S. at 56, 111 S.Ct. at 406 ("The [ERISA] pre-emption clause is conspicuous for its breadth."); *First Nat. Life Ins.*, 960 F.2d at 1549 (citation omitted) ("The Supreme Court has consistently recognized the expansive sweep of the preemption clause."). The provision states that, except as provided in the savings clause, "the provisions of this subchapter … shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan …" 29 U.S.C. § 1144(a). The Supreme Court has interpreted Congress's choice of language in the ERISA statute as being "deliberately expansive," *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987), preempting any state law that has a connection with a covered plan "even if the law is not specifically designed to affect such plans, or the effect is only indirect." *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 139, 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990).

The Court has held that a law "relates to" an employee benefit plan "in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Ingersoll–Rand Co.*, 498 U.S. at 139, 111 S.Ct. at 483. *See also Shaw v. Delta Air Lines Inc.*, 463 U.S. 85, 96–98, 103 S.Ct. 2890, 2899–2900, 77 L.Ed.2d 490 (1983); *In re Schlein*, 8 F.3d 745, 749–50 (11th Cir.1993) (citation omitted). Thus, preemption is not precluded merely because a law is not specifically designed to affect employee benefit plans, or because it does not deal exclusively with subjects covered by ERISA. *FMC Corp.*, 498 U.S. at 58, 111 S.Ct. at 407. To the contrary, a state law may be preempted even if it is consistent with ERISA's substantive requirements. *Metropolitan Life*, 471 U.S. at 739–41, 105 S.Ct. at 2388–90. Moreover, a state law with only an indirect effect on a pension plan, may nevertheless be considered to 'relate to' that plan for preemption purposes. *Ingersoll–Rand Co.*, 498 U.S. at 139, 111 S.Ct. at 483; *see also Smith v. Dunham–Bush, Inc.*, 959 F.2d 6, 9 (2d Cir.1992).[7]

---

7. *See also District of Columbia v. Greater Washington Bd. of Trade*, —— U.S. ——, ——, 113 S.Ct. 580, 583, 121 L.Ed.2d 513 (1992) (Supreme Court's interpretation of phrase "relate to" is "true to the ordinary meaning" of the term, and "gives effect to the 'deliberately expansive' language chosen by Congress"); *Alessi v. Raybestos–Manhattan Inc.*, 451 U.S. 504, 525, 101 S.Ct. 1895, 1907, 68 L.Ed.2d 402 (1981) ("it is of no moment that New Jersey intrudes indirectly through a workers compensation law, rather

The Eleventh Circuit, like the Supreme Court, has used very broad language regarding preemption, while indicating that preemption is not limitless under ERISA. The Eleventh Circuit has stated that a "state law cause of action 'relates to' an employee benefit plan if the employer's conduct giving rise to such claim was not 'wholly remote in content' from the benefit plan." *Farlow v. Union Cent. Life Ins. Co.*, 874 F.2d 791, 794 (11th Cir.1989). This court must, therefore, make the initial determination of whether Plaintiffs' claims "relate to" or are "wholly remote" from a benefit plan. *Id.; Clark v. Coats & Clark, Inc.*, 865 F.2d 1237, 1243 (11th Cir.1989).

As other courts have noted, the legislative history of ERISA also supports a broad reading of the preemption clause. *See McCoy v. Massachusetts Inst. of Technology*, 950 F.2d 13, 17 (1st Cir.1991) (legislative history counsels "against a crabbed interpretation of the statute"), *cert. denied*, —— U.S. ——, 112 S.Ct. 1939, 118 L.Ed.2d 545 (1992). The bill that became the ERISA statute originally contained a much narrower preemption provision. *Shaw*, 463 U.S. at 98–100, 103 S.Ct. at 2900–01. However, the Conference Committee rejected that more restrictive language, and substituted the current provision. *Id.* at 96–98, 103 S.Ct. at 2899–2900.

Although expansive, ERISA's preemption clause does have certain well-established limits. For example, the Supreme Court has expressly acknowledged that "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw*, 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21. *See, e.g., Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825, 830–41, 108 S.Ct. 2182, 2185–91, 100 L.Ed.2d 836 (1988) (generally applicable garnishment law not preempted); *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 6–8, 107 S.Ct. 2211, 2905–06, 96 L.Ed.2d 1 (1987) (one-time severance payment not preempted).

In addition, ERISA itself contains a "savings clause" which states that "[e]xcept as provided ... nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A). Thus, to the extent that the Alabama law at issue here may have only a peripheral impact on ERISA plans, or regulates insurance within the meaning of the savings clause, the law will not be preempted.[8]

## 2. "Relates To"

■ Plaintiffs contend that § 27–46–1's reimbursement requirement does not relate to ERISA governed plans because it only has a slight effect on them. They also argue that the statute does not affect the ERISA plans, but rather affects the providers of the plans.[9] The court finds these contentions to be meritless.

First, the court concludes that § 27–46–1 has a significant effect upon the ERISA gov-

than directly through a statute called 'pension regulation.' ").

8. ERISA also contains a "deemer" clause, which limits the scope of the savings clause, and provides that "[n]either an employee benefit plan ... nor any trust established under any such plan, shall be deemed to be an insurance company or other insurer ... to be engaged in the business of insurance ... for purposes of any law of any State purporting to regulate insurance companies [or] insurance contracts ..." 29 U.S.C. § 1144(b)(2)(B).

9. In support of their contention that the plan and not the providers or insurers of the plan is insulated from regulation by state law, Plaintiffs cite *Metropolitan Life*, 471 U.S. at 741–42, 105 S.Ct. at 2389–90.

In *Metropolitan Life*, the Court stated that the deemer clause analysis creates "a distinction between insured and uninsured plans, leaving the former open to indirect regulation while the latter are not." 471 U.S. at 747, 105 S.Ct. at 2393. It further recognized that although the clause does not in itself exempt the insurer of a plan or the insurance policy issued by such an insurer from state insurance laws, it does bar the application of state insurance laws to the plan that purchases the policy. *Id.* at 735 n. 5, 105 S.Ct. at 2386 n. 5.

Accordingly, the court finds that *Metropolitan Life* discussion of deemer clause analysis is inapposite to the determination of whether § 27–46–1 "relates to" the ERISA governed plans in question and Plaintiffs' argument to be meritless.

erned plans.[10] The Supreme Court has recognized that " '[t]o require plan providers to design their programs in an environment of differing state regulations would complicate the administration of nationwide plans, producing inefficiencies that employers might offset with decreased benefits.' " *FMC Corp.*, 498 U.S. at 60, 111 S.Ct. at 408 (quoting *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 10, 107 S.Ct. 2211, 2216, 96 L.Ed.2d 1 (1987)). Thus, where state regulations introduce complications and inefficiencies in the administration of benefit programs, the Court has found preemption to be appropriate. *See id.*

In the case at bar, Plaintiffs are seeking benefits that would be paid primarily from ERISA governed plans. Approximately eighty-five to eighty-nine per cent (85–89%) of the claims submitted by Plaintiffs would be against ERISA governed plans.[11] Although Plaintiffs are not suing individual plans for benefits, the result is ultimately the same. A decision in favor of the Plaintiffs would require Blue Cross to examine each individual claim to determine a specific amount of benefits to be paid to the Plaintiff CRNAs. *See Robinson v. Fikes of Alabama, Inc.*, 804 F.Supp. 277, 282 (M.D.Ala.1992); *Consumer Ben. Ass'n v. Lexington Ins. Co.*, 731 F.Supp. 1510, 1515 (M.D.Ala.1990).[12]

The statute in question encompasses ERISA governed employee benefit plans and imposes a significant financial and administrative obligation upon them. Ala.Code § 27–46–1 ("any contract or plan of health insurance, or *any plan or agreement for health care services* ") (emphasis added). The statute has a direct effect upon the administration of ERISA plans by mandating whom they must pay. *See Alessi*, 451 U.S. at 524–25, 101 S.Ct. at 1906–07; *Blue Cross and Blue Shield v. Peacock's Apothecary, Inc.*, 567 F.Supp. 1258, 1276 (N.D.Ala.1983). This effect is inconsistent with the purpose of the preemption clause; that being to encourage the formation of benefit plans by "minimiz[ing] the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government." *Ingersoll–Rand*, 498 U.S. at 142, 111 S.Ct. at 484.

Therefore, the court concludes that although § 27–46–1 does not expressly refer to ERISA plans, it has a "connection with" and is not "wholly remote" from such plans. *Ingersoll–Rand Co.*, 498 U.S. at 139, 111 S.Ct. at 483; *Shaw*, 463 U.S. at 96–98, 103 S.Ct. at 2899 (1983); *see In re Schlein*, 8 F.3d at 749–50 (citation omitted); *Farlow*, 874 F.2d at 794; *Clark*, 865 F.2d at 1242–433. Accordingly, the court finds that § 27–46–1 "relates to" the ERISA governed plans in question.

### 3. The Savings Clause

Having found that § 27–46–1 has a substantial economic impact on and thus connec-

10. *See Aetna Life Ins. Co. v. Borges*, 869 F.2d 142, 146 (2d Cir.) (ERISA preemption triggered "not just [by] any indirect effect on administrative procedures but rather an effect on the primary administrative functions of benefit plans ..."), *cert. denied*, 493 U.S. 811, 110 S.Ct. 57, 107 L.Ed.2d 25 (1989); *Firestone Tire & Rubber Co. v. Neusser*, 810 F.2d 550, 555–56 (6th Cir.1987) (in determining whether statute's impact on ERISA plan is too remote or peripheral, three factors should be considered: whether state law represents traditional exercise of state authority, whether the law effects the relation between "principal ERISA entities—the employer, the plan fiduciaries, and the beneficiaries, and whether the impact of the statute on an ERISA plan is merely 'incidental.' ").

11. Attached to Blue Cross's Notice of Removal was the declaration of Carl Caudle, Blue Cross's Department Manager of Underwriting, who stated that an estimated eighty-nine per cent (89%) of the benefits for which Plaintiffs could submit claims are from ERISA governed plans. During oral argument on the motion to remand, both parties agreed that approximately eighty-five per cent (85%) of the claims against Blue Cross were to be recovered from ERISA governed plans.

12. In *Consumer Benefit*, Chief Judge Thompson identified three categories of cases in which the Supreme Court has found ERISA preemption. 731 F.Supp. at 1515. The first category includes those claims which address an area specifically regulated by ERISA. *Id.* The second group includes those state law claims for which ERISA provides a specific avenue of relief. *Id.* The third category includes those state law claims which fit into neither of the previous categories but which either: specifically refer to and would affect an ERISA plan; would contravene the structure or purpose of ERISA; would require a construction of the benefit plan; or would mandate an interpretation of the statutory duties of one of the parties to the plan. *Id.* The court finds that the instant case falls within the third category recognized in *Consumer Benefit*. *See Robinson*, 804 F.Supp. at 282.

tion with ERISA plans, the court must now determine whether the statute falls within the scope of ERISA's "savings clause." The clause provides that "[e]xcept as provided ... nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A); *Pilot Life*, 481 U.S. at 45, 107 S.Ct. at 1551.

The Supreme Court utilizes a two tier test in determining whether a state law regulates insurance. *See Pilot Life*, 481 U.S. at 45, 107 S.Ct. at 1551; *see also Metropolitan Life*, 471 U.S. at 742–44, 105 S.Ct. at 2390–91; *Anschultz v. Connecticut General Life Ins. Co.*, 850 F.2d 1467, 1468 (11th Cir.1988) (per curiam) (citations omitted). The state law must pass both tiers of the test in order to be saved from preemption. *Id.* Under the first tier, the court must analyze the statute according to the "common-sense view" of the savings clause. *Pilot Life*, 481 U.S. at 48, 107 S.Ct. at 1553. Under the second tier, the court must analyze the statute by applying the McCarran–Ferguson Act [13] criteria to determine if it regulates the "business of insurance". *Id.* Therefore, only if the state statute fits the definition of insurance regulation, and the court answers "yes" to each of the three inquires of the McCarran–Ferguson Act criteria, will the statute fall within the savings clause and not be preempted by ERISA. *Metropolitan Life*, 471 U.S. at 743, 105 S.Ct. at 2391; *see also NGS American Inc. v. Barnes*, 998 F.2d 296, 298 (5th Cir. 1993).

### a. The Common–Sense View

■ In the first tier of the analysis, the common-sense view of the phrase "regulates" means that the law must have more than just an impact on the insurance industry, it must be "specifically directed toward that industry." *Pilot Life*, 481 U.S. at 50, 107 S.Ct. at 1554. If the law is not specifically directed toward the insurance industry, then the state law does not fall within the savings clause and, thus, is not saved from preemption.

In this case, using the common sense meaning of the savings clause, § 27–46–1

does not affect the insurance industry alone. Although § 27–46–1 may have a substantial effect on the insurance industry, the law affects other health care plans and agreements even though they are not part of an insurance agreement. *See id.* (Although Mississippi law of bad faith was identified with the insurance industry, it applied to all contracts, not just insurance contracts, and was, therefore, not a law regulating the insurance industry). Section 27–46–1 is not specifically directed toward the insurance industry. Therefore, the court finds that a "common-sense view" of the savings clause indicates that § 27–46–1 does not regulate insurance and that Plaintiffs' claims fail the first tier of the savings clause analysis and are not saved from preemption. *Harris v. Blue Cross and Blue Shield, Inc.*, 729 F.Supp. 49, 52 (N.D.Tex.1990).

### b. The McCarran–Ferguson Criteria

■ Nevertheless, even assuming arguendo that § 27–46–1 did pass the first tier, the court finds that it fails the second tier of savings clause analysis.

Under the second tier, a court must consider whether the law in question satisfies the three criteria for determining whether a practice constitutes "the business of insurance" under the McCarran–Ferguson Act. 15 U.S.C. § 1011 *et seq.* Those criteria are:

"[*F*]*irst*, whether the practice has the effect of transferring or spreading the policyholder's risk; *second*, whether the practice is an integral part of the policy relationship between the insurer and the insured; and *third*, whether the practice is limited to entities within the insurance industry."

*Pilot Life*, 481 U.S. at 48–49, 107 S.Ct. at 1553 (quoting *Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 129, 102 S.Ct. 3002, 3008, 73 L.Ed.2d 647 (1982) (emphasis in original).

The court concludes that § 27–46–1 fails all three of the McCarran–Ferguson factors and therefore, is not within the scope of the savings clause. Under the first factor, the statute does not have the effect of transferring the beneficiaries' risk. *Cf. Metropolitan*

---

13. 15 U.S.C. § 1011, *et seq.*

*Life,* 471 U.S. at 743, 105 S.Ct. at 2391 (mandated benefits law requiring coverage for mental health transfers policyholder risk).

Plaintiffs contend that because the beneficiary would have to pay for the services under the plan as it exists now, and not have to pay under the plan as enforced by § 27–46–1, that the statute has the effect of transferring the risk of payment. The court finds Plaintiffs' arguments to be unpersuasive.

In *Group Life & Health Ins. Co. v. Royal Drug Co.,* 440 U.S. 205, 212–14, 99 S.Ct. 1067, 1073–74, 59 L.Ed.2d 261 (1979), the Supreme Court held that agreements between Blue Shield and participating pharmacies regarding what would be paid for prescription drugs did not have the effect of spreading risk. *Group Life,* 440 U.S. at 211–15, 99 S.Ct. 1067, 1073–75. Policyholders buying prescription drugs from participating pharmacies were only charged $2 by the pharmacies with Blue Shield paying the balance of the cost of the drugs under its policy, while those buying their drugs from non-participating pharmacies had to pay more. The beneficiary paid a different amount for the prescription based upon where it was purchased. The Court held that the separate arrangement for payment with the third party pharmacies did not spread risk, because it merely reduced Blue Shield's costs for fulfilling an obligation which Blue Shield had already assumed. Blue Shield agreed to pay for prescription drugs except for a $2 charge for each prescription; the participating agreements merely designated where this could be done if the policyholder wished to receive the benefit.

In the instant case, if the plan provides for anesthesia services and the beneficiary receives those services from a Blue Cross approved provider, then Blue Cross pays the expense. Conversely, if the plan does not provide for anesthesia services, or if the beneficiary receives the services from a non-approved provider, then Blue Cross does not pay. The only concern to the beneficiary is whether anesthesia services are covered by the plan. The arrangement between Blue Cross and the anesthesia service providers does not affect the treatment available to the beneficiary, because even under § 27–46–1, if the plan itself does not provide for anesthesia services the beneficiary cannot receive reimbursement for their cost.

The situation in the case at bar is basically the same as that in *Group Life.* The plan in question provides coverage for anesthesia services as long as the beneficiary receives the services from a provider approved by Blue Cross, just as the contract of insurance in *Group Life* covered prescription drugs at much greater savings if they were provided by a participating provider.[14] Section 27–46–1 does not expand the coverage of services available to beneficiaries under the ERISA governed plans, but rather would merely impose liability upon Blue Cross. This does not spread the beneficiaries' risk. *Group Life,* 440 U.S. at 212–14, 99 S.Ct. at 1073–74; *Tingle v. Pacific Mut. Ins. Co.,* 996 F.2d 105, 108–09 (5th Cir.1993); *Stuart Circle Hosp. Corp. v. Aetna Health Management,* 995 F.2d 500, 503 (4th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 579, 126 L.Ed.2d 478 (1993); *Brewer v. Lincoln Nat. Life Ins. Co.,* 921 F.2d 150, 153 (8th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2872, 115 L.Ed.2d 1038 (1991); *McMahan v. New England Mut. Life Ins. Co.,* 888 F.2d 426, 429 (6th Cir.1989); *Anschultz,* 850 F.2d at 1469. *See Metropolitan Life,* 471 U.S. at 739–47, 105 S.Ct. at 2388–93. Accordingly, the court finds that § 27–46–1 fails the first factor.

The second factor requires a finding that the practice is an integral part of the relationship between insurer and insured. Section 27–46–1 requires Blue Cross to reimburse CRNAs; therefore, it affects Blue Cross's relationship with third parties, not its relationship with the beneficiaries. *Stuart Circle,* 995 F.2d at 503–04. Anesthesia services are provided to Blue Cross beneficiaries; Blue Cross only limits coverage by requiring beneficiaries to receive the treatment from physicians. Thus, the service is already part of the plan and § 27–46–1 does

---

**14.** Ala.Code § 10–4–106 provides Blue Cross with the authority to designate the specific health care provider within the terms of the plan.

not expand the treatment available to beneficiaries, but merely requires Blue Cross to reimburse CRNAs if they provide the service. *Id.* Therefore, the statutes benefits CRNAs, third parties, and imposes a liability upon Blue Cross, but does not expand the treatment available to beneficiaries. *Id.*

Since Blue Cross provides anesthesia services, and the terms of payment are negotiated with the individual performing anesthesia services, the relationship between it and the beneficiaries is separate from its relationship with the providers. Although there is an effect on the relationship between Blue Cross and the beneficiaries, it is a similar effect as that in *Group Life. See Camire v. Aetna Life Ins. Co.,* 822 F.Supp. 846, 851 (D.N.H. 1993).

In *Group Life,* the court found that although the pharmacy agreements could result in policyholders paying different amounts for prescriptions, the relationship existed between the insurer and a third party. 440 U.S. at 212–14, 99 S.Ct. at 1073–74. In the case sub judice, § 27–46–1 affects beneficiaries, but it is not an integral part of their relationship with Blue Cross. *Camire,* 822 F.Supp. at 851. Its primary effect is on CRNAs, third parties. Therefore, the court finds that § 27–46–1 fails the second McCarran–Ferguson Act factor. *See Stuart Circle,* 995 F.2d at 503–04; *Camire,* 822 F.Supp. at 851.

Finally, the scope of the statute is not limited to the insurance industry. As stated above, § 27–46–1 has an effect on all health care or benefit plans, not just the plans that are part of insurance agreements. Therefore, the court concludes that it fails the third factor of the McCarran–Ferguson criteria.

Accordingly, the court finds that § 27–46–1 does not fall within ERISA's savings clause and, insofar as it relates to the ERISA governed plans in question, is preempted by ERISA.[15]

### B. The Non–ERISA Plans

Having found that ERISA preempts Plaintiffs' claims against the ERISA governed plans in question, the court must now address Plaintiffs' claims against the non-ERISA plans. The issue before the court is whether § 27–46–1 repealed the exemption given to Blue Cross under §§ 10–4–115 and 27–1–4(2).

It is a "cardinal rule" of statutory construction that repeals by implication are not favored. *Radzanower v. Touche Ross & Co.,* 426 U.S. 148, 155, 96 S.Ct. 1989, 1993, 48 L.Ed.2d 540 (1976); *Morton v. Mancari,* 417 U.S. 535, 549, 94 S.Ct. 2474, 2482, 41 L.Ed.2d 290 (1974) (citations omitted); *Ardestani v. United States Dep't of Justice,* 904 F.2d 1505, 1513 (11th Cir.1990) (citations omitted) *aff'd,* —— U.S. ——, 112 S.Ct. 515, 116 L.Ed.2d 496 (1991); *Estate of Flanigan v. Commissioner, Internal Revenue,* 743 F.2d 1526, 1532 (11th Cir.1984) (citation omitted); *House v. Cullman County,* 593 So.2d 69, 78 (Ala.1992) (citation omitted). In the absence

---

**15.** Plaintiffs also argue that § 27–46–1 is not preempted based upon the role that the savings clause plays in ERISA as a whole. The court finds this contention to be meritless.

In *Pilot Life,* the Court stated that it was necessary to go beyond the McCarran–Ferguson criteria and consider "the role of the savings clause in ERISA as a whole." 481 U.S. at 51, 107 S.Ct. at 1555. It determined that the additional analysis was required because the state cause of action in question, Mississippi's common law of bad faith, sought remedies for the improper processing of a claim for benefits under an ERISA-regulated plan and therefore its understanding of the saving clause had to be informed by the legislative intent concerning ERISA's civil enforcement provisions. *Id.* at 52, 107 S.Ct. at 1555.

The court finds that *Pilot Life* did not hold that "savings clause as a whole" analysis was required in every case but rather merely that it was required in the case before it. *Id.* at 51, 107 S.Ct. at 1555. Moreover, the court concludes that analysis is inapplicable to the case at bar because the *Pilot Life* Court applied the analysis on the basis that there was an ERISA provision which provided similar relief to that under the Mississippi cause of action. This is not the situation in the instant case and therefore, the "savings clause as a whole" analysis is unnecessary.

Further, the parties discussed the effects of the deemer clause in this case. The deemer clause excepts plans that were found not to be preempted because of the savings clause exception. Since the court finds that the savings clause does not save § 27–46–1 from ERISA preemption, the ERISA deemer clause is not applicable to the facts of this case.

of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable. *Morton*, 417 U.S. at 550, 94 S.Ct. at 2482 (citation omitted). Courts are not at liberty to pick and choose among legislative enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed legislative intention to the contrary, to regard each as effective. *Id.* at 551, 94 S.Ct. at 2483. Moreover, the intention of the legislature to repeal "must be clear and manifest." *Id.* (citation and internal quotation marks omitted).

In the instant case, Plaintiffs contend that the "[n]otwithstanding any other provision of law," clause at the beginning of § 27–46–1, is a manifestation of the legislature's intent to have the statute apply to Blue Cross. They argue that § 27–46–1 is in irreconcilable conflict with §§ 10–4–115 and 27–1–4(2) and therefore repeals Blue Cross's exemptions, because it is the more recent enactment. Finally, they maintain that § 27–46–1 is a general statute which establishes an uniform system of payment of CRNAs in Alabama and therefore presumptively repeals the specific statutes which exempt Blue Cross from the insurance laws.

On the other hand, Blue Cross contends that § 27–46–1 does not manifest the legislature's intent to repeal §§ 10–4–115 and 27–1–4(2); that the statutes do not irreconcilably conflict; and that a general statute cannot repeal a specific statute.

■ The court finds Blue Cross's contentions to be correct. First, Plaintiffs' reliance on the "notwithstanding clause" in § 27–46–1 is unpersuasive. Under Alabama law, a general repealer clause in a new stat-ute is insufficient to repeal existing legislation. *See Merrell v. City of Huntsville*, 460 So.2d 1248, 1250–51 (Ala.1984) (citation omitted). A general repealer clause typically states that "all laws or parts of laws which conflict or are inconsistent with this Code are hereby repealed." *See id.* at 1250. It cannot be deemed an express repeal because it fails to identify or designate any act to be repealed. *Id.* (citation omitted).[16] Therefore, the court finds that the "notwithstanding clause" in question, which does not manifest the legislature's intent to repeal any specific statute, is insufficient to repeal §§ 10–4–115 and 27–1–4(2).[17]

■ Thus, since the "notwithstanding clause" in § 27–46–1 does not expressly repeal §§ 10–4–115 and 27–1–4(2), any repeal would arise by implication. As previously discussed, the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable. *Radzanower*, 426 U.S. at 155, 96 S.Ct. at 1993 ("positive repugnancy"); *Morton*, 417 U.S. at 550, 94 S.Ct. at 2482 (citation omitted). *See Ardestani*, 904 F.2d at 1514 (citations omitted); *Flanigan*, 743 F.2d at 1532 (citation omitted); *Merrell*, 460 So.2d at 1251 (citation omitted) ("prior act is not repealed unless provisions of a subsequent act are directly repugnant to the former"). When two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed legislative intention to the contrary, to regard each as effective. *Morton*, 417 U.S. at 551, 94 S.Ct. at 2483. The statutory provisions at issue are not in "irreconcilable conflict" in the sense that there is a positive repugnancy between them or that they cannot mutually co-exist. *Radzanower*, 426 U.S. at 155, 96 S.Ct. at 1993. It is not enough to show that the statutes produce differing re-

**16.** Moreover, it cannot be determinative of an implied repeal for it does not declare any inconsistency but conversely, merely predicates a repeal upon the condition that a substantial conflict is found under the application of the rules of implied repeals. *Id.* at 1251 (citation omitted).

**17.** Moreover, "[i]t is always appropriate to assume that our elected representatives, like other citizens, know the law." *Cannon v. University of Chicago*, 441 U.S. 677, 696–97, 99 S.Ct. 1946, 1957–58, 60 L.Ed.2d 560 (1979). Hence, the court must assume that the Alabama legislature was aware of §§ 10–4–115 and 27–1–4(2) when it enacted § 27–46–1, and that it was aware that in the past when it has wished to subject § 10–4–100 corporations to the insurance laws, it has done so expressly.

Specifically, § 27–1–4(1), includes § 10–4–100 corporations and therefore Blue Cross, among the insurers which must pay a premium tax under § 27–4–5(a). *See also* Ala.Ins.Dept.Reg. No. 56 (expressly including § 10–4–100 corporations).

sults when applied to the same factual situation, for that does no more than state the problem. *Id.* (citation omitted). Repeal is to be regarded as implied only if necessary to make the later enacted law work, and even then only to the minimum extent necessary. *Id.* (citation omitted).

■ Sections 10–4–115 and 27–1–4 exempt Blue Cross and the other § 10–4–100 corporations from the state insurance laws and together with § 10–4–106, allow the corporations to choose the exclusive providers of covered treatment. On the other hand § 27–46–1 guarantees that where a health care plan provides for anesthesia services which a CRNA is licensed to administer, the insurer of the plan must directly reimburse a CRNA who administers the service to a beneficiary. Clearly, these two statutes can co-exist by merely exempting Blue Cross and any other § 10–4–100 corporations, pursuant to §§ 10–4–115 & 27–1–4(2), from § 27–46–1. This result is the clear intent of § 27–1–4(2), which provides that the entirety of Title 27, of which the CRNA statute in question is a part, *shall not apply* to nonprofit corporations under § 10–4–100 *et seq.*

Finally, the court rejects Plaintiffs' contention that because § 27–46–1 establishes an uniform system of payment of CRNAs in Alabama, it presumptively repeals the statutes which exempt Blue Cross from the state insurance laws. In support of their argument, Plaintiffs cite *Day v. Morgan County Comm'n,* 487 So.2d 856 (Ala.1986) and *Shepherd v. Clements,* 141 So. 255 (Ala.1931). Plaintiffs, however, misread these cases.

In *Day,* the Alabama Supreme Court held that a 1979 act did not repeal by implication a 1943 Morgan County local act. 487 So.2d at 860.[18] It stated that it could not discern a *"legislative intent"* to impose a "uniform system statewide" by passage of the 1979 general act. *Id.* at 859 (emphasis added). In *Shepherd* the court held that the Jefferson

County Practice Act, a local act, was impliedly repealed by subsequent statutes which were part of a legislative scheme that significantly revised the circuit courts. 141 So. at 255. It reviewed the extensive changes to the circuit courts' operations and jurisdiction and recognized that the presumption against finding of implied repeal gives way to a plain manifestation of contrary *"legislative intent."* 141 So. at 255–56 (emphasis added).

Plaintiffs mistakenly rely on *Day* and *Shepherd* for the proposition that a law which establishes a statewide standard impliedly repeals any existing inconsistent legislation. They argue that any statute that is applicable statewide demonstrates sufficient legislative intent to repeal a prior law by implication.

Plaintiffs' contention is meritless. First, it ignores that the focus for a finding of implied repeal must be upon a clear and manifest legislative intent. *See Morton,* 417 U.S. at 551, 94 S.Ct. at 2483; *Patel v. Quality Inn South,* 846 F.2d 700, 704 (11th Cir.1988) ("Only when [legislature's] intent to repeal or amend is clear and manifest will we conclude that a later act implicitly repeals or amends an earlier one."), *cert. denied,* 489 U.S. 1011, 109 S.Ct. 1120, 103 L.Ed.2d 182 (1989); *Merrell,* 460 So.2d at 1251 (citation omitted). The *Day* court recognized this when it stated:

> ... prior special or local statutes may be repealed by implication from the enactment of a later general statute *where the legislative intent to effectuate a repeal is unequivocally expressed.* A repeal will also result by implication when a comprehensive revision of a particular subject is promulgated, or upon the prediction of a statewide system of administration to replace previous regulation by localities.

487 So.2d at 859 (citation and internal quotation marks omitted and emphasis added).[19] *See Shepherd,* 141 So. at 256.

---

18. The issue in *Day* was whether Act No. 43–70, a local act governing the compensation of the probate judge of Morgan County, was impliedly repealed by Ala.Code § 17–4–138, a general act of statewide application. 487 So.2d at 857.

19. "Unless there is a plain indication of [the legislature's] intent that the general act shall

repeal the special act, the special act will continue to have effect, and the general words with which it conflicts will be restrained and modified accordingly, so that the two are to be deemed to stand together, one as the general law of the land, and the other as the law of the particular case." *Day,* 487 So.2d at 859.

Next, Plaintiffs' argument mischaracterizes § 27–46–1 and mistakes it for a statute that demonstrates the necessary legislative intent for implied repeal. Section 27–46–1 is a statute which, like every law passed by the legislature that is not geographically limited, is applicable statewide and which does not by itself necessarily demonstrate the legislative intent required to impliedly repeal an earlier law. It does not establish a uniform system of CRNA payments, but rather merely requires that if a health care plan provides for anesthesia services which a CRNA is licensed to administer, the insurer of the plan must reimburse the CRNA who administers the service.

Section 27–46–1 is not an extensive and comprehensive revision of existing law, which indicates the necessary legislative intent to impliedly repeal an earlier law. *Day,* 487 So.2d at 859; *Merrell,* 460 So.2d at 1251.[20] It does not establish a clear and manifest legislative intent to repeal §§ 10–4–115 and 27–1–4. To interpret § 27–46–1 as being such a statute would make repeals by implication commonplace and thereby be inconsistent with the well established rule of statutory construction that they are disfavored. Moreover, it "frustrates rather than effectuates legislative intent simplistically to assume that *whatever* furthers the [later enacted] statute's primary objective must be the law." *Rodriguez v. United States,* 480 U.S. 522, 525–26, 107 S.Ct. 1391, 1393, 94 L.Ed.2d 533 (1987) (per curiam) (emphasis in original).

Plaintiffs also argue that § 10–4–115 does not apply to § 27–46–1 because § 10–4–115 refers only to "statute(s) of this state applying to insurance companies," and this court has already held in denying remand that § 27–46–1 is not saved from ERISA preemption because it is not a law which "regulates insurance." This does not follow at all. The analysis involved in determining the applicability of ERISA's savings clause is entirely different from that used in construing the effect of § 10–4–115. Plaintiffs are comparing apples to oranges.

The court has dealt with the savings clause analysis earlier in this opinion. As to § 10–4–115, the fact that the CRNA statute also applies to entities in addition to insurance companies does not mean that it is not a "statute ... applying to insurance companies." Both § 10–4–115 and § 27–1–4(2) express the legislative intent that a statute applying to insurance companies may not also be made applicable to nonprofit health care plan corporations such as Blue Cross unless it is done so by an express amendment to the article of the Alabama Code dealing with such nonprofit corporations, § 10–4–100 *et seq.* The legislature did that, by amending § 10–4–115, when it decided to make the provisions regarding annual premium tax to be paid by domestic insurance companies applicable to nonprofit corporations such as Blue Cross. Acts 1969, Extraordinary Session, No. 27, p. 73. It did not choose to do so in regard to the CRNA statute.

Accordingly, the court finds that under Alabama law, § 27–46–1 is not applicable to the non-ERISA plans administered by Blue Cross because Blue Cross is not subject to that statute.

## CONCLUSION

For the foregoing reasons, the court finds that Blue Cross' motion for partial summary judgment is due to be granted and Plaintiffs' motion for partial summary judgment is due to be denied. A separate Judgment will be issued in accordance with this Memorandum Opinion.

## *JUDGMENT*

In accordance with the Memorandum Opinion issued contemporaneously herewith, Plaintiffs, Lee Hayden's, Mary Long's, and Neil Buettner's, motion for partial summary judgment is hereby DENIED. Defendant's

---

**20.** In *Merrell,* the Alabama Supreme Court addressed the conflict between Act 75–380, a local act applying only to Madison County and the City of Huntsville, and the subsequently enacted Ala. Code § 28–3A–1, a general law of statewide application. 460 So.2d at 1249. The court found that the two laws were incompatible and that the general law constituted an extensive and comprehensive revision of the law regarding the licensing of alcoholic beverages in Alabama. *Id.* at 1251. Therefore, the court held that there was legislative intent to repeal the earlier law. *Id.*

motion for summary judgment as to Counts II and III of its counterclaim is GRANTED, and judgment is entered as follows:

1. It is hereby DECLARED that *Ala. Code* § 27–46–1 (1975 & Supp.1993) is preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et seq.* (ERISA) as to employee welfare benefit plans governed by ERISA.

2. It is further DECLARED that the Defendant Blue Cross and Blue Shield of Alabama is not subject to *Ala.Code* § 27–46–1 (1975 & Supp.1993) as to plans not governed by ERISA.