Norman **HOBBS, et. al., Plaintiffs,**

v.

**BLUE CROSS AND BLUE SHIELD OF ALABAMA, Defendant.**

**Civil Action No. 99–S–1161–N.**

United States District Court, M.D. Alabama, Northern Division.

June 16, 2000.

Royce A. Ray, III, Mobile, Richard A. Bearden, Birmingham, AL, for plaintiff.

Cavender Kimble, Leigh Anne Hodge, Mark Tindal, Birmingham, AL, for defendant.

## MEMORANDUM OPINION AND ORDER

COODY, United States Magistrate Judge.

### I. Introduction

The plaintiffs filed a complaint in the Circuit Court of Montgomery County seeking compensatory and punitive damages and, purportedly, an injunction on a class wide basis against Blue Cross for its alleged refusal to comply with ALA. CODE § 27–51–1 (1975) (the "Physician Assistant Statute").[1] Specifically, the plaintiffs allege that Blue Cross has failed to pay claims for medical services provided by physician assistants covered under various Blue Cross contracts.[2] Plaintiffs seek injunctive relief, requiring Blue Cross to comply with the statute, and an award of damages for claims denied allegedly in violation of the statute. A large portion of the plans, under which these claims were submitted and denied, are ERISA plans. (*See* Aff. of Janet L. McGowan, Blue Cross Vice President and Actuary).

Blue Cross timely removed the action to this court on the grounds of complete preemption by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001(1), et. seq. and based on independent federal question jurisdiction pursuant to the Federal Employees Health Benefits Act ("FEHBA"), 5 U.S.C. §§ 8901 et. seq.[3] The court has original

---

1. ALA.CODE § 27–51–1 provides, in pertinent part:

    (a) An insurance policy or contract providing for third-party payment or pre-payment of health or medical expenses shall include a provision for the payment to a supervising physician for necessary medical or surgical services that are provided by a licensed physician assistant practicing under the supervision of the physician, and pursuant to the rules, regulations, and parameters for physician assistants, if the policy or contract pays for the same care and treatment provided by a licensed physician or doctor of osteopathy.

    . . . .

    (e) For purposes of this section, third-party payment or pre-payment includes an individual or group policy or accident or health insurance or individual or group hospital or health care service contract, and individual or group health maintenance organization contract, an organized delivery system contract, a medical service organization created pursuant to Article 6, Chapter 4, Title 10, or a preferred provider organization contract.

2. It is not clear from the complaint whether the plaintiffs are seeking payment to be made directly to the physician assistant who rendered the services or whether they are simply seeking payment to the supervising physician. In either circumstance, it is clear the plaintiffs are seeking payment for the services rendered by physicians' assistants.

3. As explained below, the court concludes that ERISA preemption provides a basis for the court's jurisdiction. Therefore, the court need not reach the issue of whether FEHBA provides an independent basis for the court's jurisdiction.

jurisdiction pursuant to 28 U.S.C. § 1331 if the court determines the plaintiffs' claims are preempted by ERISA. The plaintiffs filed a motion to remand and to tax costs and attorney fees against Blue Cross. For the reasons that follow, the court concludes that the plaintiffs' motion to remand is due to be denied.

## II.  Plaintiffs' Arguments

The plaintiffs argue that there is no federal question jurisdiction because the "well-pleaded complaint" rule requires remand; the defendant's notice of removal is defective; there is no ERISA preemption because the plaintiffs' Alabama state law claims do not "relate to" any ERISA plan; and there is no ERISA preemption due to the operation of the ERISA "savings clause." As explained below, the court concludes that the plaintiffs' first two arguments lack merit. Thus, the court will focus primarily upon plaintiffs' argument that there is no ERISA preemption.

### A.  The "Well–Pleaded Complaint" Rule

"Under the 'well-pleaded complaint' rule, a case does not arise under federal law unless a federal question is presented on the face of the plaintiff's complaint." *Whitt v. Sherman Int'l Corp.*, 147 F.3d 1325, 1329 (11th Cir.1998). The plaintiffs argue that the court lacks subject matter jurisdiction over their well-pleaded complaint because they raised no federal questions or claims on the face of the complaint.

The doctrine of "complete preemption" or "super preemption," however, qualifies the general well-pleaded complaint rule. Where Congress preempts an area of law so completely that any complaint raising claims in that area is necessarily federal in character, super preemption applies, and federal jurisdiction exists, even if the face of the complaint does not plead federal claims.... Super preemption converts state law claims into federal claims for purposes of the

well-pleaded complaint rule, allowing a defendant to remove the case to federal court.

*Id.See also, Blab T.V. of Mobile, Inc. v. Comcast Cable Communciations, Inc.*, 182 F.3d 851, 854–55 (11th Cir.1999). Thus, the well-pleaded complaint rule is not a bar to this court's jurisdiction. Because the court concludes that the plaintiffs' claims are preempted by ERISA, the court has jurisdiction over this matter.

### B.  The Notice of Removal

■ The plaintiffs argue that Blue Cross's notice of removal is defective because it alleges in "conclusory terms" the basis for federal jurisdiction. *See, e.g., Bryant v. Blue Cross and Blue Shield of Alabama*, 751 F.Supp. 968 (N.D.Ala.1990) (State law fraud claim against group medical benefits insurer was not subject to removal where insurer made only bare-bones contention in the notice of removal that "action will be governed by the provisions of the Employee Retirement Income Security Act (ERISA)"). The notice of removal in the instant action is distinguishable from the *Bryant* notice of removal because it contains facts relating to the types of plans administered by Blue Cross and the effect ALA. CODE § 27–51–1 (1975) would have on Blue Cross's administration of those plans. (Notice of Removal ¶¶ 3–6). Thus, Blue Cross's notice of removal in the instant action contains more than a "bare-bones contention" that the action is governed by ERISA.

Moreover, the federal statute governing removal requires that a notice of removal contain only "a short and plain statement of the grounds for removal." 28 U.S.C. § 1446. This statute has been interpreted to mean that the same liberal rules testing the sufficiency of a pleading should also apply to evaluating the sufficiency of a defendant's notice of removal. *See, e.g., Rachel v. Georgia*, 342 F.2d 336, 340 (5th Cir.1965) ("[W]e have no doubt that the rules of notice pleading apply with as much vigor to petitions for removal as they do to

other pleadings, which according to Rule 8(f) of the Federal Rules of Civil Procedure 'shall be so construed as to do substantial justice.' "). Thus, the plaintiffs' argument that the notice of removal is defective fails.

## C. ERISA Preemption

The plaintiffs argue that there is no ERISA preemption because the plaintiffs' Alabama state law claims do not "relate to" any ERISA plan. The plaintiffs argue, in the alternative, that even if the court were to find that the state law claims do "relate to" ERISA plans, there is no ERISA preemption due to operation of the ERISA "savings clause." As discussed below, the court concludes that the plaintiffs' claims do "relate to" ERISA plans and the plaintiffs' claims are not "saved" from preemption by operation of ERISA's saving clause.

### 1. Plaintiffs' Alabama state law claims "relate to" an ERISA plan

The plaintiffs assert that because ALA. CODE § 27–51–1(a) (1975) makes no explicit reference to ERISA plans and functions regardless of the existence of any ERISA plan, it is a statute of general application and thus, is not preempted by ERISA. *See Ingram v. American Chambers Life Ins. Co.*, 643 So.2d 575, 577 (Ala. 1994) (citing *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 139, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990)).[4] The plaintiffs concede that the statute "applies equally to ERISA plans and non-ERISA plans." Thus, the court must determine whether the statute "relates to" or has "a connection" with employee benefit plans to determine whether the plaintiffs' claims are preempted by ERISA or whether the

statute is one of general application and thus, not preempted by ERISA.

■■■ "[T]he question whether a certain state action is pre-empted by federal law is one of congressional intent. 'The purpose of Congress is the ultimate touchstone.' " *Ingersoll–Rand*, 498 U.S. at 137–38, 111 S.Ct. 478. ERISA preemption is noticeable for its breadth and scope. *See FMC Corp. v. Holliday*, 498 U.S. 52, 58, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990). "Its 'deliberately expansive' language was 'designed to "establish pension plan regulation as exclusively a federal concern." ' " *Ingersoll–Rand*, 498 U.S. at 139, 111 S.Ct. 478 (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987)). A state law does not need to specifically cover subject matter regulated by ERISA to be preempted. *Id.*

> In fact, however, Congress used the words "relate to" in § 514(a) in their broad sense. To interpret § 514(a) to preempt only state laws specifically designed to affect employee benefit plans would be to ignore the remainder of § 514. It would be unnecessary to exempt generally applicable state criminal statutes from preemption under § 514(b), for example, if § 514(a) applied only to state laws dealing specifically with ERISA plans.

*Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 98, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983).

■■ A law relates to an employee welfare benefit plan if it has "a connection with or reference to such plan." *Pilot Life*, 481 U.S. at 47, 107 S.Ct. 1549. "[The preemption clause] establishes as an area of exclusive federal concern the subject of every state law that 'relate[s] to' an employee benefit plan governed by ERISA." *FMC Corp.*, 498 U.S. at 58, 111 S.Ct. 403.

---

4. The court notes that the issue of ERISA preemption is a matter of federal law, not state law. Thus, the reasoning of the Alabama Supreme Court on this issue is of only persuasive value to this court. Furthermore, the court is not persuaded to base its opinion on the dicta cited by plaintiff in *McClendon*,

especially since the United States Supreme Court held in *McClendon* that ERISA preempted an employee's state law wrongful discharge claim based on his allegation that his discharge was based on his employer's desire to avoid making contributions to his pension fund. 498 U.S. at 140, 111 S.Ct. 478.

While the statute makes no explicit reference to ERISA plans, it does include any "group policy or accident or health insurance or ... group hospital or healthcare service contract[s], ... [and] group health maintenance organization contract[s]" which would include employee welfare benefit plans sponsored and maintained by employers for the benefit of their employees. ALA.CODE § 27–51–1(e) (1975). The plaintiffs recognize that the Physician Assistant Statute includes, within the scope of its application, employee benefit plans governed by ERISA, as well as non-ERISA governed plans. "Section 514(a) of ERISA, 29 U.S.C. § 1144(a), preempts 'any and all State laws insofar as they may now or hereafter, relate to any employee benefit plan' covered by ERISA." *Shaw*, 463 U.S. at 91, 103 S.Ct. 2890. ERISA preemption is not limited to only those state statutes which specifically reference or are created to affect employee benefit plans because such narrow construction ignores the language and intent of ERISA.

To determine whether the statute "relates to" or has a "connection with" ERISA plans, the court must return to the intent of Congress.

Congress intended "to ensure that plans and plan sponsors would be subject to a uniform body of benefit laws; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government ..., [and to prevent] the potential for conflict in substantive law ... requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction."

This objective was described ... as being to "eliminat[e] the threat of conflicting and inconsistent State and local regulation."

*New York State Conference of Blue Cross and Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 656–57, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995) (citations omitted). State laws that mandate employee benefit structures, plan administration or alternative enforcement mechanisms "relate to plans" and are therefore preempted by ERISA. *Id.* at 658, 115 S.Ct. 1671.

■ The Physician Assistant Statute "relates to" ERISA benefit plans because it mandates that plans and plan administrators must provide for the payment of services of licensed physician assistants.

A state rule of law may be preempted even though it has no such direct nexus with ERISA plans if its effect is to dictate or restrict the choices of ERISA plans with regard to their benefits, structure, reporting and administration, or if allowing states to have such rules would impair the ability of a plan to function simultaneously in a number of states.

*Keystone Chapter, Associated Builders and Contractors, Inc. v. Foley*, 37 F.3d 945, 954 (3rd Cir.1994). Moreover, the statute requires plans and plan administrators to include a provision for such payment, if such provision is not currently part of the plan.[5] "[W]e have not hesitated to apply ERISA's preemption clause to state laws that risk subjecting plan administrators to conflicting state regulations." *FMC Corp.* 498 U.S. at 59, 111 S.Ct. 403. The Physician Assistant Statute injects just such a possibility of conflict into the administration of ERISA plans. The plaintiffs' claims for damages and injunctive relief, if successful, would require ERISA plan administrators in Alabama to pay benefits in a manner different than in those states that have not enacted similar direct payment statutes.[6] "The statute

**5.** Regulations that "have only an indirect economic influence and do not 'bind plan administrators to any particular choice' " are not preempted by ERISA. *See Blue Cross of California v. Anesthesia Care Associates Med. Group, Inc.*, 187 F.3d 1045, 1052 (9th Cir.

1999). Such is not the case here as the statute requires plans and plan administrators to include provisions providing for the payment of physician assistants.

**6.** It appears that only Connecticut, Florida, Illinois, Iowa, North Carolina and Texas have

has a direct effect upon the administration of ERISA plans by mandating whom they must pay." *Hayden v. Blue Cross and Blue Shield of Alabama*, 843 F.Supp. 1427, 1433 (M.D.Ala.1994). Blue Cross administers ERISA plan benefits for participants and beneficiaries scattered throughout the nation for national employers with Alabama operations. The Physician Assistant Statute would interfere with procedures for reimbursing benefits due under contracts by requiring a scheme in Alabama different than those prevailing in other states. "ERISA's comprehensive preemption of state law was meant to minimize this sort of interference with the administration of employee benefit plans," *ibid.*, so that employers would not have to "administer their plans differently in each State in which they have employees." *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 10, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987).

Enforcement of the statute would be inconsistent with the intent and purpose of ERISA's preemption provision.

It is thus clear that ERISA's pre-emption provision was prompted by recognition that employers facing and maintaining employee benefit plans are faced with the task of coordinating complex administrative activities. A patchwork scheme of regulation would introduce considerable inefficiencies in benefit program operation, which might lead to those employers with existing plans to reduce benefits, and those without plans to refrain from adopting them. Preemption ensures that the administrative practices of a benefit plan will be governed by only a single set of regulations. *Id.* at 11, 107 S.Ct. 2211.

■ Moreover, not all the employee welfare plans administered by Blue Cross

enacted statutes regarding payment of physician assistants. In Connecticut, physician assistants are reimbursed if the "services are within the individual's area of professional competence . . . and are currently reimbursed when rendered by any other licensed health care provider." CONN. GEN. STAT. § 38a-499 (1997). Florida construes health care contracts "as providing for payment to . . . employers of a physician assistant . . . who performs such services that are within the scope of a physician assistant's . . . professional license. The provisions of this subsection apply only if reimbursement for an assisting physician, licensed . . . would be covered and a physician assistant . . . who performs such services is used as a substitute ." FLA. STAT. 627–419 (1997). Illinois does not allow physician assistants "to bill patients or in any way to charge for services . . . . Payment for services rendered by a physician assistant shall be made to his or her employer if the payor would have made payment had the services been provided by a physician licensed to practice medicine in all its branches." ILL. COMP. STAT. 225 § 9⅚ (1987). Iowa requires a provision for payment of physician assistants "if the policy or contract would pay for the care and treatment if the care and treatment were provided by a person engaged in the practice of medicine and surgery or osteopathic medicine and surgery." IOWA CODE § 514.11 (1969). However, Iowa does not "require an individual or group health maintenance organization, an organized delivery system, or a preferred provider organization or arrangement to provide

payment or prepayment for services provided by a licensed physician assistant . . . unless the physician assistant's supervising physician, the physician-physician assistant team . . . has entered into a contract . . . to provide services . . ." *Id.* North Carolina provides that "[n]o agency, institution or physician providing a service for which payment or reimbursement is required to be made under a policy . . . shall be denied the payment or reimbursement on account of the fact that the services were rendered through a physician assistant acting under the authority of rules adopted by the North Carolina Medical Board." N.C. GEN. STAT. § 58–50–26 (1999). Finally, Texas allows the "person who is issued, who is party to, or who is a beneficiary under any health insurance policy" to select "a physician assistant to provide the services scheduled in the policy that fall within the scope of the license of that practitioner." TEX. INS. § 21.52(3)(a)(12) (1983). Thus, although Connecticut, Florida, Illinois, North Carolina and Texas allow for the payment of services by physician assistants, they do not mandate the inclusion of payment provisions in health care plans or contracts as the Alabama statute does. While Iowa requires a payment provision, it is contingent upon the existence of a contract between the health care plan and the provider which provides for payment. If the plan does not provide for payment, Iowa does not command payment.

provide coverage for services of licensed physician assistants. The availability of benefits for medical services provided by physician assistants is governed by each ERISA plan. The civil enforcement provisions of ERISA, 29 U.S.C. § 1132(a), provide the exclusive remedy available to recover benefits due under employee benefit plans. *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). Any common law or statutory claim of a person seeking to recover ERISA plan benefits is preempted. 29 U.S.C. § 1144(a); *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). It is clear from the complaint that the plaintiffs are seeking payment for services rendered under health plans administered by Blue Cross.[7] "[W]here state law claims ... are based upon the failure of a covered plan to pay benefits, the state law claims have a nexus with the ERISA plan and its benefits system." *Variety Children's Hosp. v. Century Med. Health Plan, Inc.,* 57 F.3d 1040, 1042 (11th Cir.1995). "A party's state law claim 'relates to' an ERISA benefit plan for purposes of ERISA preemption whenever the alleged conduct at issue is intertwined with the refusal to pay benefits." *Garren v. John Hancock Mut. Life Ins. Com.,* 114 F.3d 186, 187 (11th Cir.1997). The plaintiffs claim that Blue Cross allegedly denied payments to physician assistants under various employee benefit plans, in violation of the statute. The court concludes that the plaintiffs' claims "relate to" and have a "connection with" ERISA benefit plans. Because the court concludes that the statute relates to or has a connection with ERISA governed welfare and benefit plans, the plaintiffs' claims are pre-empted unless the plaintiffs can establish that the "saving clause" of ERISA is applicable to the statute at issue.

### 2. The ERISA "savings clause" does not operate to preclude preemption

The plaintiffs allege that, even if the statute is preempted by ERISA, the "saving clause" precludes preemption. 29 U.S.C. § 1144(b)(2)(A) of ERISA specifically provides that ERISA "preemption" does not apply to any state laws that regulate insurance. This provision of ERISA—which is commonly referred to as the ERISA "savings clause"—states in pertinent part that " ... nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking or securities." 29 U.S.C. § 1144(b)(2)(A). The plaintiffs claim that Blue Cross, an *insurance company,* has failed and refuses to include in its *insurance* contracts, provisions for payment of services rendered by physician assistants as required by ALA. CODE § 27–51–1(a) (1975).[8] The plain-

---

**7.** "Since August 1, 1997, when Section 27–51–1, *Code of Alabama* 1975, began to apply to services provided under its health contracts, BLUE CROSS has refused to pay licensed Physicians Assistants or their supervising physicians for necessary medical or surgical services provided." *Complaint,* ¶ 10.

"During the time period August 1, 1997 to present, BLUE CROSS has refused to pay the Plaintiffs and the class for the provided medical or and surgical services compensable under the laws of the State of Alabama." *Complaint,* ¶ 12.

"As a result of BLUE CROSS' failure to comply with the laws of the State of Alabama, the Plaintiffs have suffered lost wages and lost opportunity." *Complaint,* ¶ 18.

"Plaintiffs bring this action on behalf of themselves and a class composed of Physi-

cians Assistants, and physicians who employ and or have employed Physicians Assistants after the effective date of Ala.Code § 27–51–1 (i.e. May 27, 1997), and who are or have been entitled to payments from BLUE CROSS under the laws of the State of Alabama and are entitled to payment from BLUE CROSS under the laws of the State of Alabama." *Complaint,* ¶ 21.

"Each class member has, or had in the past, rendered services pursuant to the Laws of Alabama regulating Physicians Assistants for which each member of the class has not been paid." *Complaint,* ¶ 22(a).

**8.** The defendant disputes that it is an insurance company for the following reasons. Blue Cross asserts that it is a special purpose

tiffs rely on *HealthAmerica v. Menton*, 551 So.2d 235, 238 (Ala.1989) to support their position that the Physician Assistant statute regulates insurance. In *HealthAmerica*, the Alabama Supreme Court concluded that a claim for violation of Alabama's "twisting" statute found at ALA. CODE § 27–12–6 (1975) was "saved" from ERISA preemption because it was a state law regulating the business of insurance.[9] The plaintiffs argue that ALA. CODE § 27–51–1(a) (1975) regulates insurance because, like the twisting statute in *HealthAmerica*, it is located in the section of the Alabama Code entitled "Insurance."[10]

■ The plaintiffs' overly simplistic argument that placement of the Physician Assistant Statute in the "Insurance" section of Alabama Code means that the statute regulates the business of insurance ignores well-settled federal law which requires the court to conduct a two-step analysis to determine if a state law regulates insurance within the meaning of ERISA's saving clause. *Pilot Life*, 481 U.S. at 48, 107 S.Ct. 1549. In determining whether the statute regulates insurance, the court must first look with a "common-sense view" to whether the state law regulates insurance. Thereafter, the court must determine whether the law "regu-

lates the 'business of insurance' for purposes of the McCarran–Ferguson Act." *Id.*

**a. The "common-sense view" test.**

■ The law is well-settled that in order to satisfy the "common-sense view" of the business of insurance, a state law must "expressly target" the insurance industry. *Pilot Life*, 481 U.S. at 50, 107 S.Ct. 1549. *See also, Smith v. Jefferson Pilot Life Ins. Co.*, 14 F.3d 562, 569 (11th Cir.1994). "A common-sense view of the word 'regulates' would lead to the conclusion that in order to regulate insurance, a law must not just have an impact on the insurance industry, but must be *specifically directed* toward that industry." *Pilot Life*, 481 U.S. at 49, 107 S.Ct. 1549 (emphasis added).

■ The court concludes that the Physician Assistant Statute is not specifically directed to the insurance industry, because by its express terms, it is not limited to insurers. In addition to insurers, it has general application to all other plans or agreements for health care services, which includes self-funded plans and other plans that are not financed with insurance contracts. The statute specifically applies to "group hospital or health care service contract[s], ... individual or group health

---

not for profit corporation organized "for the purpose of establishing, maintaining and operating a health care service plan under which health services are furnished to such of the public who become subscribers to such plan." ALA. CODE §§ 10–4–100, et. seq. (1975). Blue Cross administers employer-sponsored health benefit plans for both governmental and non-governmental employees. *See* McGowan Aff. ¶ 2. Some plans that Blue Cross administers are self-funded, which means that Blue Cross pays claims from its own funds and then is reimbursed by the employer. Other plans are insured, which means that Blue Cross pays claims from its own funds. *Id.* When Blue Cross administers plans which are self-funded, it is not acting as insurance company because it has not accepted any of the risk of insuring the beneficiaries. However, for those plans which are funded, Blue Cross is acting as insurance company. The majority of the claims dollars paid by Blue Cross in claims each year are

under self-funded health benefit plans. *See* McGowan Aff. ¶ 2.

9. The court again notes that the question of ERISA preemption is a matter of federal law, not state law. In *HealthAmerica*, the Alabama Supreme Court found that "[t]he Legislature of Alabama, in adopting the 'twisting' statute § 27–12–6, has enacted a fraud and misrepresentation statute that specifically relates to the insurance industry and, therefore, we believe it is 'saved' from preemption by a proper enterpretation (sic)." 551 So.2d at 244. The court is not persuaded that *HealthAmerica* applies to the statute at issue nor mandates remand as the plaintiffs allege.

10. Nothing in *HealthAmerica v. Menton*, 551 So.2d 235 (Ala.1989), leads this court to conclude that the Alabama Supreme Court based its decision regarding preemption of the "twisting" statute on its placement in the code.

maintenance organization contract[s], ... organized delivery system contract[s], ... [and] medical service organization[s] created pursuant to Article 6, Chapter 4, Title 10, or preferred provider organization contract[s]." Thus, the statute includes, within its reach, not only insurance companies and contracts, but employers' self-funded arrangements for health care services for employees and their dependents and health care service plans. The statute, therefore, fails the "common-sense view" of regulating insurance. *See Hayden*, 843 F.Supp. at 1434 (holding analytically analogous statute failed the common-sense view where although the statute "may have a substantial effect on the insurance industry, the law affects other healthcare plans and agreements even though they are not part of an insurance agreement"). Even assuming the statute passes the "common-sense view" of regulating insurance, the court concludes that the statute fails the McCarran–Ferguson criteria of insurance regulation.

### b. The McCarran–Ferguson criteria

■ In determining whether a law regulates insurance within the requirements of the saving clause, the United States Supreme Court has borrowed and tailored a three-step analysis from the McCarran–Ferguson Act. *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 742–44, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985). Under that test, the court must first decide:

[F]irst, whether the practice has the effect of transferring or spreading a policyholder's risk;

[S]econd, whether the practice is an integral part of the policy relationship between the insurer and the insured; and

[T]hird, whether the practice is limited to entities within the insurance industry.

*Id*, at 743, 105 S.Ct. 2380. These factors are to be used as "guideposts" to "satisfy" the "common-sense view." *UNUM Life Ins. Co. of America v. Ward*, 526 U.S. 358, 374, 119 S.Ct. 1380, 143 L.Ed.2d 462 (1999).

The plaintiffs argue that the Physician Assistant Statute meets the first prong of the McCarran–Ferguson criteria because it "effectively shifts the risks associated with the costs of physician assistant services from the insured to the insurer." The defendant argues, on the other hand, that the Physician Assistant Statute does not spread the risk because it does not mandate benefits or expand the services offered by the terms of the applicable plan or contract. *Jefferson Pilot*, 14 F.3d at 569–70 (holding that a Georgia statute requiring an insurer to give prior notice of cancellation did not fall within the saving clause because the statute had no effect on "the [initial] apportionment of risk, i.e., what medical costs are covered, that the parties made upon entering the contract.") The defendant asserts that the Physician Assistant Statute has no effect on the initial apportionment of risk which occurs when the insured and insurer enter into an insurance contract, because the insurer already bears the risk for covered services provided by physicians. The statute "only identifies another class of providers who may be reimbursed for medical services already covered by the contract." Thus, as defined by the Eleventh Circuit, the statute does not spread the risk because it does not mandate benefits or expand services offered by the terms of the applicable plan or contract. *Jefferson Pilot*, 14 F.3d at 569 (citing *Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 130, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982)). The court agrees with the defendant and notes that the statute expressly directs payment to supervising physicians for services provided by physician assistants, "if the policy or contract pays for the same care and treatment provided by a licensed physician or doctor of osteopathy." Thus, the statute does not meet the first prong of the McCarran–Ferguson test.

The statute meets the second McCarran–Ferguson criterion if it is an "inte-

gral part of the policy relationship, that is, it '[d]efines the terms of the relationship between the insurer and the insured.'" *Pilot Life,* 481 U.S. at 51, 107 S.Ct. 1549. (Mississippi's bad faith law fails second criteria since it does not define terms of the relationship between the insurer and the insured, but declares only that, whatever terms have been agreed upon in the insurance contract, a breach of that contract may in certain circumstances allow the policy holder to obtain punitive damages.) The plaintiffs argue that the Physician Assistant Statute constitutes an integral party of the policy relationship between insurer and insured because it requires a separate contract term between the insurer and the insured. Section 27–51–1(c) expressly mandates that the contract term required by the Act be added to contracts between the insured and the insurer which are "delivered, continued or renewed" on or after the effective date of the legislation or, as to any existing contracts, on the "policy's or contract's anniversary or renewal date."

Although the statute requires this provision in the contract or policy between insured and insurer, the defendant argues that the statute's language concerns the insurer's relationship to third parties, not its insureds. Specifically, the defendant argues that the Physician Assistant Statute defines the terms of the relationship between Blue Cross and its providers, not Blue Cross and its subscribers. While the statute purports to require Blue Cross to add a provision to all contracts requiring direct payment to physicians for services provided by physician assistants, it does not require the addition of substantive coverage terms to the contractual relationship between Blue Cross and its subscribers. The court agrees and concludes that the statute, by its terms, does not change the bargain between Blue Cross and its subscribers. Instead, it directs how plans are to be administered with respect to third-party providers. Thus, the statute does not meet the second prong of the McCarran–Ferguson test.

To satisfy the third prong, the statute must be specifically limited to the insurance industry. The court concludes that by its express terms the statute is not limited to the insurance industry. Rather it applies to "group hospital or healthcare service contract[s], ... individual or group health maintenance organization contract[s], ... organized delivery system contract[s], ... [and] medical service organization[s] created pursuant to Article VI, Chapter 4, Title 10, or preferred provider organization contract[s]." ALA. CODE § 27–51–1(e)(1975). Thus, the court concludes that the statute fails the third prong of the McCarran–Ferguson test. For these reasons, the court concludes that the Physician Assistant Statute does not regulate insurance within the meaning of ERISA's saving clause and is not "saved" from preemption.

## CONCLUSION

Accordingly, it is

ORDERED that the plaintiffs' motion to remand be and hereby is DENIED.