826 So.2d 844 (2001)
Ex parte S.C.W., P.D., and S.D.H.
(In re S.C.W. v. C.B. P.D. v. R.L. S.C.W. and S.D.H. v. C.B.)
1001107.
Supreme Court of Alabama.
October 12, 2001.
Rehearing Denied December 28, 2001.
*846 Pate DeBardeleben, Montgomery, for petitioners.
Floyd Minor of Minor & Olszewski, L.L.C., Montgomery; and B. Andrew Whitmire, Jr., Birmingham, for respondents R.E.L. and C.A.L.
PER CURIAM.
S.C.W. ("the biological father") appealed to the Court of Civil Appeals from a judgment granting the petition for adoption filed in this case by R.E.L. and C.A.L. ("the adoptive parents"). The juvenile court held that the biological father's failure to comply with the Putative Father Registry Act, §§ 26-10C-1 and -2, Ala. Code 1975 ("the Registry Act"), constituted his implied consent to the adoption of his biological child. P.D. and S.D.H., the biological father's attorneys, appealed to the Court of Civil Appeals from a judgment sanctioning them pursuant to the Alabama Litigation Accountability Act, §§ 12-19-270 et seq., Ala.Code 1975 ("the ALAA"). The Court of Civil Appeals affirmed the judgments. S.C.W. v. C.B., 826 So.2d 825 (Ala.Civ.App.2001). We granted certiorari review; we reverse and remand.
For a detailed account of the facts in this case, see the Court of Civil Appeals' opinion, 826 So.2d at 827-32. We summarize only the pertinent facts.
The biological parents are unmarried teenagers. In October 1998, C.B. ("the biological mother"), gave birth to a child. Testing confirmed the paternity of the biological father. The biological mother had decided to place the child for adoption, against the wishes of the biological father and his family. Upon the birth of the child, the adoptive parents, who were selected by the biological mother, took custody of the child; they have had custody of the child since that time.
The biological father and the adoptive parents filed petitions in different counties relating to the child. The adoptive parents filed in the Autauga County Probate Court a petition for adoption and obtained an interlocutory order giving them custody of the child. The biological father filed in the Elmore County Probate Court, among other petitions and motions, a petition for a declaration of legitimation, a petition to change the child's name, and a petition for a paternity adjudication and for custody. These proceedings were eventually consolidated into one proceeding in the Elmore Juvenile Court.
The biological father did not file with the Department of Human Resources, within the time required by the Registry Act (i.e., within 30 days of the birth of the child), a notice of intent to claim paternity pursuant *847 to the Registry Act. In January 1999, a news reporter told the biological father about the Registry Act. He filed the notice required by the Registry Act on January 16, 1999.
In August 1999, the biological mother and the adoptive parents moved to dismiss the biological father's legitimation and paternity actions, and moved for a summary judgment in the adoption action, arguing that the biological father had consented to the child's adoption by failing to timely file the required notice pursuant to the Registry Act. On September 1, the juvenile court entered a summary judgment in favor of the adoptive parents based on the biological father's failure to comply with the Registry Act. On September 14, the biological father moved for a declaratory judgment, questioning the constitutionality of the Registry Act. The juvenile court denied his motion two days later.
The biological father appealed to the Court of Civil Appeals from the summary judgment, but on January 4, 2000, that court remanded the case with instructions for the juvenile court to conduct a final dispositional hearing on the adoption petition. The juvenile court held the hearing and then entered a final judgment of adoption, granting the adoptive parents' petition to adopt the child.
The Court of Civil Appeals affirmed the judgment of adoption, holding that the biological father's failure to comply with the Registry Act was dispositive and rejecting his arguments that the Registry Act is unconstitutional as applied to him and that he had substantially complied with the Registry Act by filing petitions for legitimation and paternity.[1] Judge Crawley dissented. In his dissent, Judge Crawley stated that he believed the Registry Act and the Alabama Adoption Code, § 26-10A-1 et seq., Ala.Code 1975 ("the Adoption Code"), were in conflict, and he explained how the two statutes could be harmonized to give effect to each. He concluded that the juvenile court had erred in entering the judgment of adoption. He also concluded that if the Court of Civil Appeals had reversed the judgment, the judgment imposing sanctions against the biological father's attorneys should also be reversed.
After considering the voluminous record in this case, the Court of Civil Appeals' opinion, Judge Crawley's dissent, cases from courts in several of our sister states that have considered the problem presented here, and the adoption codes and putative-father registry statutes of many of our sister states, we agree with the views expressed by Judge Crawley in his well-researched dissent. We quote Judge Crawley's dissent below:
"I believe that the Putative Father Registry Act and portions of the Alabama Adoption Code conflict, and, by harmonizing the two statutes, I conclude that registering with the putative-father registry is but one way a putative father like S.C.W. can entitle himself to receive notice of, and a right to contest, the proposed adoption of his child. Therefore, I would reverse the summary judgment holding that the putative father had irrevocably impliedly consented to the adoption pursuant to § 26-10C-1(i), would vacate the judgment finalizing the adoption, and would instruct the court to *848 hold a contested hearing, pursuant to Ala.Code 1975, § 26-10A-24. In light of my resolution of what I perceive as a conflict between the statutes, I would also reverse the sanctions imposed against P.D. and S.D.H. pursuant to Ala. Code 1975, § 12-19-270 et seq., the Alabama Litigation Accountability Act (the `ALAA').
". . . .
"The Effect of the Putative-Father Registry on the Alabama Adoption Code
"Section 26-10A-17, Ala.Code 1975, a part of the Alabama Adoption Code, lists the persons who must receive notice of an adoption proceeding. One of those persons is `the putative father of the adoptee if made known by the mother or otherwise known by the court.' See § 26-10A-17(a)(10). Section 26-10A-7, Ala.Code 1975, lists the persons whose consent (or whose relinquishment of the child) is required for an adoption. One of those persons is `[t]he putative father if made known by the mother or ... otherwise made known to the court provided he responds within 30 days to the notice he receives under Section 26-10A-17(a)(10).' See § 26-10A-7(5), Ala. Code 1975. `[T]he persons listed in section 26-10A-7 have an absolute veto power over the proposed adoption.' § 26-10A-7 (Commentary).
"The foregoing statutes demonstrate that the Alabama Adoption Code gives a putative father the right to veto the adoption of his biological child when two circumstances are present: (1) the court is made aware of the identity of the putative father, and (2) the putative father, having received notice of the proposed adoption, responds to the notice within 30 days. Both circumstances are present in this case.
"The court handling the adoption was made aware of the identity of the putative father. On October 30, 1998, when the child was two days old, the adoptive parents filed an adoption petition in the Autauga Probate Court. On November 12, when the child was 15 days old, the putative father was `made known to the court' when the guardian ad litem appointed by the Elmore Probate Court to represent the child in the legitimation proceeding informed the adoption court that the putative father had previously filed a declaration of legitimation in the Elmore Probate Court and wished to contest the adoption.
"The putative father timely responded to the notice of the adoption proceeding. On December 24, the putative father was served with the adoption petition. On December 1, the putative father, apparently having had actual knowledge of the petition before December 24, filed a contest of the adoption. It is undisputed that the putative father `respond[ed] within 30 days to the notice he receive[d] under Section 26-10A-17(a)(10).'
"Reading only the provisions of the Alabama Adoption Code in isolation, I think it is clear that a putative father like S.C.W., whose identity was made known to the court and who timely responded to the notice provided him, had the power to halt the adoption of his child. However, S.C.W. was unable to prevent the adoption in this case because the adoptive parents convinced the trial court that the provisions of another statute, outside the Alabama Adoption Codea statute neither cross-referenced nor mentioned by name in the Alabama Adoption Code itselfsuperseded the provisions of the Alabama Adoption Code. The statutory provision upon which the adoptive parents relied is known as the `Putative Father Registry Act' and is found at § 26-10C-1, Ala.Code 1975.

*849 "The Putative Father Registry Act directs the Department of Human Resources (`DHR') to establish a registry for males who intend to claim paternity of a child born out of wedlock, or whose paternity of such a child has been adjudicated or acknowledged. The Act requires that a notice of intent to claim paternity include the names of the father and mother of the child born out of wedlock, their addresses, Social Security numbers, and dates of birth, as well as current income and financial information concerning the father. The Act dictates that the child's name and place of birth, if known, and the date or dates of sexual intercourse between the parents, be listed. Subsection (f) of the Act provides that the information contained in the registry shall not be divulged except upon court order. That subsection further directs DHR, when it receives notice of a pending adoption, to search the registry for a correspondence between the biological mother, the prospective adoptee's date of birth, and the information provided by putative fathers. The statute mandates that, if DHR finds a correspondence, it must notify the court handling the adoption of the putative father's notice of intent to claim paternity of the prospective adoptee so that notice of the pending adoption can be given to him.
"Subsection (i) of the Act provides:
"`Any person who claims to be the natural father of a child and fails to file his notice of intent to claim paternity pursuant to subsection (a) prior to or within 30 days of the birth of a child born out of wedlock, shall be deemed to have given an irrevocable implied consent in any adoption proceeding.'
"§ 26-10C-1(i), Ala.Code 1975.
"Subsection (i), a part of the Putative Father Registry Act, establishes the irrevocable implied consent to adoption of any putative father who fails to file with the registry. Section 26-10A-7(5), a part of the Alabama Adoption Code, gives a putative father whose identity has been made known to the court and who timely responds to notice of the adoption, veto power over an adoption. Sections 26-10C-1(a) and (i) appear to authorize only one way for a putative father to be `made known' to an adoption court, namely: the putative father must file with the putative-father registry. On the other hand, § 26-10A-7(5) seems to envision more than one way in which a putative father could be `made known' to the adoption court, namely: (1) the biological mother could make the court aware of the putative father or (2) the putative father could be `otherwise known by the court.' The last or `catchall' means of making a putative father known to the courtthe `otherwise-known-by-the-court' methodis, in contrast to the relevant section of the Putative Father Registry Act, open-ended, comprehensive, and nonexclusive. The catchall provision encompasses, for example, the means employed in this case: notification by a guardian ad litem. The provision does not exclude such other ways of making a putative father `known by the court' as the court's noting that the putative father has filed a paternity action or a declaration of legitimation. The exclusivity of the method for making a putative father known to the court provided by the Putative Father Registry Act contrasts sharply with the inclusivity of the catchall provision in the Alabama Adoption Code. The two statutes conflict.
"It is well settled that adoption is purely statutory, unknown to the common law, and that strict statutory adherence is required. Ex parte Sullivan, 407 So.2d 559 (Ala.1981). Because the Alabama Adoption Code is a comprehensive *850 legislative package relating to a single subject, I cannot conclude that the Putative Father Registry Act (a later enactment not a part of the Alabama Adoption Code) repeals by implication inconsistent portions of the Alabama Adoption Code. Repeal by implication is not favored in the law. See Radzanower v. Touche Ross & Co., 426 U.S. 148, 155[, 96 S.Ct. 1989, 48 L.Ed.2d 540] (1976). Repeal by implication is found `only when two laws are so repugnant to or in conflict with each other that it must be presumed that the Legislature intended that the latter should repeal the former.' City of Birmingham v. Southern Express Co., 164 Ala. 529, 538, 51 So. 159, 162 (1909) (quoted in Hall v. Teipie-Ching Chi, 782 So.2d 218, 222 (Ala.2000)). Unless two statutes are in irreconcilable conflict, it is the court's duty to regard each as effective and to arrive at a construction that will harmonize the seeming conflict and give each statute a reasonable field of operation. See, e.g., Benson v. City of Birmingham, 659 So.2d 82 (Ala.1995).
"`Courts are not at liberty to pick and choose among legislative enactments, and when two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed legislative intention to the contrary, to regard each as effective.'

"Hayden v. Blue Cross & Blue Shield of Alabama, 843 F.Supp. 1427, 1437 (M.D.Ala.1994). This court has the duty to construe provisions within a statutory plan in harmony with each other. J.N.H. v. N.T.H., 705 So.2d 448 (Ala.Civ. App.1997). In interpreting statutory language, a court does not look at one word or one provision in isolation, but rather looks to a whole statutory scheme for clarification and contextual reference. United States v. McLemore, 28 F.3d 1160 (11th Cir.1994). An adoption statute `should be interpreted to give consistent, harmonious and sensible effect to all its parts.' N. Singer, 3A Sutherland Statutes and Statutory Construction § 68.04 at 104 (5th ed.1992).
"Applying the foregoing principles of statutory construction to the inconsistency between § 26-10A-7(5) and § 26-10C-1(i), I would hold that the conflict between the Alabama Adoption Code and the Putative Father Registry Act is not irreconcilable, and that it is possible to construe the provisions so that each statute has a reasonable field of operation. I would conclude that, because § 26-10A-7(5)the consent provision of the Alabama Adoption Codeis part of a unified scheme relating to a single subject, one portion of a comprehensive whole, it takes priority over § 26-10C-1(i) the irrevocable-implied-consent provision of the Putative Father Registry Actbecause the latter statute is a separate enactment, outside the Alabama Adoption Code, and is not cross-referenced by the Alabama Adoption Code. Other jurisdictions that give preclusive effect to a man's failure to file with a putative-father registry state (or at least cross-reference) in their adoption codes the requirement of filing with the registry. See Ariz.Rev.Stat. Ann. § 8-106.01 (1997); Conn. Gen.Stat. Ann. §§ 45a-716 and 45a-724 (1996); Ga. Code Ann. § 19-11-9 (1997); Idaho Code § 16-1513 (1994); 750 Ill. Comp. Stat. 50/12 (West 1997); Ind.Code § 31-19-5-12 (1997); La.Rev.Stat. Ann. § 9:400 (1993); Mich. Comp. Law § 710.33 (1993); Minn.Stat. § 259.52 (1997); Mo.Rev.Stat. § 453.030 (1997); Neb.Rev.Stat. § 43-104.02 (1997); 1993 N.M. Laws § 32-A-5-19 (1997); N.Y. Dom. Rel. Law § 111 a (McKinney 1997); Ohio Rev.Code Ann. § 3107.062 (Anderson 1996); Okla. Stat. tit. 10, § 7506-1.1 (1998); Tenn.Code Ann. § 36-2-318 (1997); Utah Code Ann. *851 § 78-30-4.14 (1995); Wyo. Stat. Ann. § 1-22-117 (1995). The Alabama Adoption Code does not mention the Putative Father Registry Act.

"The Putative Father Registry Act has two purposes: `protecting the rights of responsible fathers and facilitating speedy adoptions of children whose fathers do not wish to assume parental responsibility.' Note, `Protecting the Unwed Father's Opportunity to Parent: A Survey of Paternity Registry Statutes,' 18 Rev. Litig. 703, 727 (1999). Those purposes are not undermined by allowing a putative father to be `made known' to the adoption court in a variety of ways (such as by the putative father's filing a paternity action or a declaration of legitimation). The Putative Father Registry Act can be harmonized with the Alabama Adoption Code by holding that filing with the registry is just one of several ways in which a putative father can bring about judicial awareness of his paternity claim. Cf. Diemert v. City of Mobile, 474 So.2d 663 (Ala.1985) (holding that §§ 11-47-192 and 11-47-23, which require a claimant to file a sworn statement with the municipal clerk within six months of the accrual of a tort claim against the City, are satisfied by filing a complaint against the City within the limitations period). I see no need to outline all of the means by which a putative father can, consistent with the dictates of the Alabama Adoption Code, bring his claim to the attention of a judicial tribunal, but I would hold that the means employed by the putative father in this casefiling a declaration of legitimation and a paternity complaint were sufficient. Those means were not only equivalent to filing with the putative-father registry, but were, in fact, superior. The Putative Father Registry Act requires a notice of intent to claim paternity. S.C.W.'s legitimation and paternity actions constituted actual claims of paternity. To hold that, by failing to file with the registry, S.C.W. had given his irrevocable implied consent to the adoption, notwithstanding his filing two lawsuits demonstrating his strenuous objection to the adoption, would be an extreme case of elevating form over substance.
"ALAA Sanctions
"The putative father's attorneys appeal the trial court's award of attorney fees to the adoptive parents pursuant to the ALAA. Section 12-19-272 provides that a court may assess attorney fees against an attorney or a party that brings an action or claim `without substantial justification.' Section 12-19-271(1) defines an action `without substantial justification' as an action that is `frivolous, groundless in fact or in law, vexatious, or interposed for any improper purpose, including without limitation, to cause unnecessary delay or needless increase in the cost of litigation as determined by the court.' The trial court, in order to award attorney fees, must make specific findings that the action was brought `without substantial justification.' Pacific Enters. Oil Co. v. Howell Petroleum Corp., 614 So.2d 409 (Ala. 1993).
"The trial court stated that the putative father's contest to the adoption was made without `substantial justification.' The court also stated that actions of the putative father and his attorneys `unnecessarily expanded these proceedings and caused unnecessary delay.' The trial court also stated that the putative father's attorneys and his parents illegally publicized the adoption contest as a means of subjecting the court to public pressure.
"As one could infer from my discussion and resolution of the conflicts between *852 the Putative Father Registry Act and the Alabama Adoption Code, I would necessarily conclude that the putative father's actions were brought with substantial justification and did not unnecessarily delay the proceedings. In addition, our supreme court has stated:
"`Also, we conclude that the legislature had no intention to chill attorney creativity in making good faith arguments for changes in the law. Trial courts should be exceedingly careful in making a "without substantial justification" finding, so as not to discourage attorneys from creatively arguing for change in the law based on rational, good faith argument.'

"Pacific Enters. Oil Co., 614 So.2d at 418. Therefore, I would reverse the sanctions imposed on P.D. and S.D.H."
We agree, and we adopt Judge Crawley's dissent. Therefore, we reverse the judgment of the Court of Civil Appeals and remand the cause for that court to, in turn, remand the cause to the trial court with instructions to vacate the judgment of adoption, to hold a contested hearing pursuant to § 26-10A-24, and to conduct any further necessary proceedings that are consistent with this opinion. In light of this conclusion, those further proceedings should include a reevaluation of the sanctions entered against the biological father's attorneys.
REVERSED AND REMANDED WITH INSTRUCTIONS.
MOORE, C.J., and LYONS, SEE, and JOHNSTONE, JJ., concur.
HARWOOD, J., concurs specially.
HOUSTON, BROWN, WOODALL, and STUART, JJ., dissent.
HARWOOD, Justice (concurring specially).
I concur specially, because of my following considerations and concerns:
I agree that the conflicting portions of the Putative Father Registry Act and the Alabama Adoption Code can be harmonized by regarding registration with the Putative Father Registry as but one of the ways by which a putative father can entitle himself to receive notice of, and the right to contest, the proposed adoption of a child born out of wedlock, but only to the extent that the putative father has, as in this case, been made known to the court within 30 days of the birth of the child. That particular time limitation is mandated by § 26-10C-1(i) of the Putative Father Registry Act, which states unambiguously and emphatically that "[a]ny person who claims to be the natural father of a child and fails to file his notice of intent to claim paternity pursuant to subsection (a) [which establishes a putative-father registry for the recording of, among other things, the name and other personal data of any person filing a notice of intent to claim paternity of a child] prior to or within 30 days of the birth of a child born out of wedlock, shall be deemed to have given an irrevocable implied consent in any adoption proceeding."
As Judge Crawley notes in his dissent, now adopted by this Court, "[O]n November 12, [1998,] when the child was 15 days old, the putative father was `made known' to the court...."
Section 26-10A-17(a)(10) of the Alabama Adoption Code, as it read at the commencement of the proceedings involved in this case, provided that "[u]nless service has been previously waived, notice of pendency of the adoption proceeding shall be served by the petitioner on: ... The father and putative father of the adoptee if made known by the mother or otherwise known by the court." (Emphasis added.) That subsection was amended effective June 11, 1999, to add the following at its end, "unless the court finds that the father *853 has given implied consent to the adoption, as defined in Section 26-10A-9." 826 So.2d at 854.
Section 26-10A-7(a)(5) of the Adoption Code provides that "[c]onsent to the petitioner's adoption ... shall be required of the following: ... [t]he putative father if made known by the mother or is otherwise made known to the court provided he responds within 30 days to the notice he receives under § 26-10-17(a)(10)."
I agree with Judge Crawley, and with the main opinion, that "The Putative Father Registry Act can be harmonized with the Alabama Adoption Code by holding that filing with the registry is just one of several ways in which a putative father can bring about judicial awareness of his paternity claim." 826 So.2d at 851. However, to hold that such judicial awareness can be fully effectual if occurring more than 30 days after the birth of the child in question would do extreme violence to the clear mandate of § 26-10C-1(i) of the codified version of the Putative Father Registry Act that notice of intent to claim paternity by means of a filing with the putative-father registry must be accomplished "prior to or within 30 days of the birth of the child," or else there "shall be deemed to have been given an irrevocable implied consent in any adoption proceedings." Such a holding would go well beyond permissible harmonizing and reconciling of two statutes, and would constitute a complete repeal of that portion of the Putative Father Registry Act.
If making known to the court the identity of the putative father may be accomplished at some point in time more than 30 days after the birth of the child, with the result that the putative father's consent to the adoption must be required if he responds within 30 days of his receipt of notice of the adoption proceeding, then the above-quoted § 26-10C-1(i) of the Putative Father Registry Act is relegated to the status of a "dead letter," and its clear legislative declarationthat a putative father who has failed to file "prior to or within 30 days of the birth of the child born out of wedlock, shall be deemed to have given an irrevocable implied consent in any adoption proceeding"completely nullified. There is no such thing as an "irrevocable" implied consent that can become subsequently revocable, long after the passage of 30 days from the birth of the child, simply by a response by the putative father within 30 days after notice to him of the pendency of an adoption proceeding. Given the facts of this case, the "harmonization" and "reconciliation" between the Alabama Adoption Code and the Putative Father Registry Act need go no further than to judicially construe and expand § 26-10C-1(i) of the Putative Father Registry Act to mean "[a]ny person who claims to be the natural father of a child and fails to file his notice of intent to claim paternity [with the putative father registry]; or who is not otherwise made known to the court in which an adoption proceeding is pending, prior to or within 30 days of the birth of a child born out of wedlock, shall be deemed to have given an irrevocable implied consent in any adoption proceeding."
The wisdom of the "30 days of the birth" time limit imposed by the Legislature is not for us to second-guess, absent constitutional impediments. We do not reach the constitutional issues the putative father raises in this case because of the disposition ordered by the main opinion, and similarly, but more restrictively, called for in this special concurrence.
HOUSTON, Justice (dissenting).
I concur with the per curiam majority opinion of the Court of Civil Appeals. Therefore, I dissent.
BROWN and WOODALL, JJ., concur.
*854 STUART, Justice (dissenting).
I respectfully dissent. I believe the majority opinion of the Court of Civil Appeals is correct. The Putative Father Registry Act, § 26-10C-1 et seq., Ala.Code 1975, is clear and unambiguous. It does not conflict with the Alabama Adoption Code, § 26-7-1 et seq. These statutory provisions can easily be read in harmony. Unless two statutes are in irreconcilable conflict, it is the court's duty to regard each as effective and to construe them in such a way as to harmonize any seeming conflict and give each statute a reasonable field of operation. See, e.g., Benson v. City of Birmingham, 659 So.2d 82 (Ala.1995).
"Courts are not at liberty to pick and choose among legislative enactments, and when two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed legislative intention to the contrary, to regard each as effective."
Hayden v. Blue Cross & Blue Shield of Alabama, 843 F.Supp. 1427, 1437 (M.D.Ala.1994). This Court has the duty to construe provisions that appear within a statutory scheme in harmony with each other. J.N.H. v. N.T.H., 705 So.2d 448 (Ala.Civ.App.1997). An adoption statute "should be interpreted to give consistent, harmonious and sensible effect to all its parts." N. Singer, 3A Sutherland Statutes and Statutory Construction, § 68.04 at 104 (5th ed.1992)(footnote omitted).
The Putative Father Registry Act and the notice of provisions of the Alabama Adoption Code, § 26-10A-17, can easily be read together harmoniously. Section 26-10A-17(a) lists those persons or agencies upon whom notice of a petition for adoption must be served:
"(1) Any person, agency, or institution whose consent or relinquishment is required by Section 26-10A-7, unless service has been previously waived[.]
"(2) The legally appointed custodian or guardian of the adoptee.
"(3) The spouse of any petitioner who has not joined in the petition.
"(4) The spouse of the adoptee.
"(5) The surviving parent or parents of a deceased parent of the adoptee.
"(6) Any person known to the petitioners as having physical custody, excluding licensed foster care or other private licensed agencies or having visitation rights with the adoptee under an existing court order.
"(7) The agency or individual authorized to investigate the adoption under Section 26-10A-19.
"(8) Any other person designated by the court.
"(9) Department of Human Resources.
"(10) The father and putative father of the adoptee if made known by the mother or otherwise known by the court [The original 1990 Act stopped here. The 1999 amendment added:] unless the court finds that the father has given implied consent to the adoption, as defined in Section 26-10A-9."
Section 26-10C-1(f) of the Putative Father Registry Act provides an additional method by which a father of a child born out of wedlock may secure his right to notice of a pending adoption proceeding.
"(f) The Department of Human Resources shall, upon request, provide the names and addresses of persons listed with the registry to any court. The information shall not be divulged to any other person except upon order of a court for good cause shown. The Department of Human Resources shall further after receiving notice pursuant to Section 26-10A-17 of the pendency of any adoption proceeding wherein the proposed adoptee is a child born within *855 300 days of the date or dates of sexual intercourse listed in the registry and to the same biological mother listed in the registry, immediately send a copy of the notice of intent to claim paternity to the court handling the adoption. When the court handling the adoption receives said notice of the intent to claim paternity, that court shall forthwith give notice of the pendency of the adoption proceeding to the putative father listed in such notice of intent to claim paternity and at the address therein listed, and additionally notify the biological mother that the putative father has registered in conformity with the putative father registry."
The Alabama Adoption Code was adopted in 1990. The Alabama Putative Father Registry Act was adopted in 1996 and became effective on January 1, 1997. The Putative Father Registry Act specifically references § 26-10A-17 of the Adoption Code. See § 26-10C-1(f). The two acts are codified as Chapter 10A and Chapter 10C of Title 26 of the Alabama Code. The Alabama Putative Father Registry Act, adopted as Act No. 96-537, contains no repealer section. It was clearly intended to supplement, not repeal, the provisions of the Adoption Code. Section 26-10A-7 identifies those persons whose consents or relinquishment are required:
"(1) The adoptee, if 14 years of age or older, except where the court finds that the adoptee does not have the mental capacity to give consent;
"(2) The adoptee's mother;
"(3) The adoptee's presumed father, regardless of paternity, if:
"a. He and the adoptee's mother are or have been married to each other and the adoptee was born during the marriage, or within 300 days after the marriage was terminated by death, annulment, declaration of invalidity, or divorce, or after a decree of separation was entered by a court; or
"b. Before the adoptee's birth, he and the adoptee's mother have attempted to marry each other by a marriage solemnized in apparent compliance with law, although the attempted marriage is or could be declared invalid, and,
"1. If the attempted marriage could be declared invalid only by a court, the adoptee was born during the attempted marriage, or within 300 days after its termination by death, annulment, declaration or invalidity, or divorce; or
"2. If the attempted marriage is invalid without a court order, the adoptee was born within 300 days after the termination of cohabitation; or
"c. After the adoptee's birth, he and the adoptee's mother have married, or attempted to marry each other by a marriage solemnized in apparent compliance with law, although the attempted marriage is or could be declared invalid, and
"1. With his knowledge or consent, he was named as the adoptee's father on the adoptee's birth certificate; or
"2. He is obligated to support the adoptee pursuant to a written voluntary promise or agreement or by court order; or
"d. He received the adoptee into his home and openly held out the adoptee as his own child;
"(4) The agency to which the adoptee has been relinquished or which holds permanent custody and which has placed the adoptee for adoption, except that the court may grant the adoption without the consent of the agency if the adoption is in the best interests of the adoptee and there is a finding that the agency *856 has unreasonably withheld its consent; and
"(5) The putative father if made known by the mother or is otherwise made known to the court provided he responds within 30 days to the notice he receives under Section 26-10A-17(a)(10)."
The consents or relinquishments required may be implied (see § 26-10A-9) or express (see § 26-10A-11). Section 26-10C-1(i) sets forth one circumstance under which consent will be implied, and it makes that implied consent irrevocable. Section 26-10C-1(i) provides:
"(i) Any person who claims to be the natural father of a child and fails to file his notice of intent to claim paternity pursuant to subsection (a) prior to or within 30 days of the birth of a child born out of wedlock, shall be deemed to have given an irrevocable implied consent in any adoption proceeding."
This section sets forth a period within which the father of a child born out of wedlock must act. This is clearly within the authority of the Legislature, just as it is within its authority to establish statutes of limitation to bar a cause of action.
Judge Crawley's dissent, quoted and adopted by the majority as its opinion, states:
"I see no need to outline all of the means by which a putative father can, consistent with the dictates of the Alabama Adoption Code, bring his claim to the attention of a judicial tribunal, but I would hold that the means employed by the putative father in this casefiling a declaration of legitimation and a paternity complaintwere sufficient. Those means were not only equivalent to filing with the putative-father registry, but were, in fact, superior. The Putative Father Registry Act requires a notice of intent to claim paternity. S.C.W.'s legitimation and paternity actions constituted actual claims of paternity. To hold that, by failing to file with the registry, S.C.W. had given his irrevocable implied consent to the adoption, notwithstanding his filing two lawsuits demonstrating his strenuous objection to the adoption, would be an extreme case of elevating form over substance."
It is not the prerogative of the courts to make law or to declare one means of asserting parental rights superior to another, especially where the Legislature has spoken, and spoken to the contrary. The Legislature has recognized a paternity action completed to adjudication (see § 26-10C-1(a)(1), (a)(3) and (b)) or the filing of an instrument acknowledging paternity pursuant § 26-11-1 to 26-11-3, inclusive (statutes providing for the Legitimation of Children) (see § 26-10C-1(a)(4)), as initial steps toward claiming parental rights, but it is the filing with the registry of the adjudication of paternity or the legitimation declaration that makes a paternity action complete or the filing of an instrument acknowledging paternity effectual. Filing a paternity action in a juvenile court or filing a declaration of legitimation in a probate court is clearly not, alone, in the eyes of the Legislature, the equivalent of, or superior to, filing a notice of intent to claim paternity with the Putative Father Registry.
The majority has directed the Court of Civil Appeals to reverse its judgment in this case and to remand the case to the trial court for a contested hearing. The trial court will be required to determine if S.C.W. has given, in this case, implied consent to the adoption by his actions or his failure to act as required by § 26-10A-24. It was clearly the intent of the Legislature in enacting the Putative Father Registry Act to obviate the need for such a hearing and to make the failure to file a claim of paternity by a method prescribed *857 in the act an irrevocable implied consent to the adoption of a minor child.
Because the provisions of the Alabama Adoption Code and the Putative Father Registry Act can be read together harmoniously and in a manner so as to give each statute its own field of operation, the decision of the Court of Civil Appeals affirming the trial court's summary judgment and final order of adoption should be affirmed. Therefore, I dissent.
NOTES
[1] The Court of Civil Appeals also concluded that the biological father had not properly challenged the constitutionality of the Registry Act. We disagree. We have reviewed the record and the briefs filed by the biological father, and, although he may not have expressed his constitutional argument in the most artful of terms, we believe that the father's constitutional challenge to the Registry Act was sufficiently raised before the juvenile court and the Court of Civil Appeals to allow us to consider it.